IN THE UNITED STATES DISTRICT COURT
RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION 2019 JAN -4 A 10: 22

WALTER PETTAWAY,
as Administrator of the Estate
of Joseph Lee Pettaway, deceased,

                Plaintiffs,

*versus*

DOES 1 through 15, such persons
being Montgomery Police Department
policemen or other City employees
whose identities are unknown to
Plaintiff, but will be supplied later by
Amendment of this Complaint when
ascertained; ERNEST N. FINLEY, JR,
Police Chief of the City of Montgomery;
and the CITY OF MONTGOMERY,
an Alabama municipal corporation,

                Defendants.

Civil Action

$\lozenge$: 19-cv-00008-GMB

Jury Trial Demanded

## COMPLAINT

### Nature of the Action, Jurisdiction and Venue

1. This is a civil action brought pursuant to 42 U.S.C. §1983, et seq., to assert claims and recover damages for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution by defendant City of Montgomery and members of its police department acting under color of state law, which violations were a proximate cause of the death of Joseph Lee Pettaway on the night of July 7-8, 2018, in Montgomery, Alabama; and to assert pendant state law claims arising therefrom.

2. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3)-(4) as Plaintiff asserts claims arising under the laws of the United States including 42

1

U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.  Venue is proper in this Court under 28 U.S.C. §1391(b) because all defendants reside in the Middle District of Alabama and the incidents, events, actions, and occurrences giving rise to these causes of action occurred in the Middle District of Alabama.

Parties

4.  Plaintiff Walter Pettaway is the brother of Joseph Lee Pettaway, deceased, and is the duly appointed Administrator of the Estate of Joseph Lee Pettaway, deceased.

5. Defendant Does 1-8 are Montgomery Police Department (MPD) policemen who, acting under color of law and within the line and scope of their duties for the MPD, went to and were present in the vicinity of 3909 Cresta Circle on the night of July 7-8, 2018, when a MPD police dog, which was intentionally released, attacked and killed Joseph Lee Pettaway at that address.

6. Defendant Does 9-12 are MPD supervisory policemen who, acting under color of law and within the line and scope of their duties for the MPD, had direct responsibility for the supervision, oversight and/or direction of Defendant Does 1-8 on the night of July 7-8, 2018.

7. Defendant Ernest N. Finley, Jr., the Chief of the Police Department for the City of Montgomery, Alabama, and Defendant Does 13-15 are managerial, supervisory, and policymaking employees of the MPD, who at all relevant times recited hereinafter, acting under color of law within the line and scope of their duties, were responsible for making policy and procedures for the MPD for the operation of the MPD and the management, oversight, and supervision of all employees of the MPD, including without limitation, Does 1 through 12.

8.  More specifically, defendant Finley and Defendant Does 13-15 made policies and procedures for the MPD and had the duty and were responsible for the operation of the MPD in accordance with policies and procedures necessary to protect and insure that MPD policemen did not violate the rights of citizens under the U.S. Constitution.

9. All claims made herein against all individual defendants, including defendant Finley and Defendant Does 1-15, are made against such defendants in their official and individual capacities; all are alleged to have acted under color of state law in all acts and omissions alleged hereafter, and alleged to have acted at all times within the line and scope of their authority and with the authority or ratification of their principal, the Defendant City of Montgomery.

## Allegations Common to All Claims

10. During the spring and summer of 2018, Joseph Lee Pettaway and others were employed in making repairs to a small, one-story, approximately 960 square foot, six-room house located at 3809 Cresta Circle ("the house") in Montgomery, Alabama. In July, 2018, neither electrical service nor water service were being supplied to the house and it was not being occupied as a residence.

11. On Saturday, July 7, 2018, Joseph Lee Pettaway worked at the house with others doing primarily clean-up work.

12. After completing their work that Saturday evening, Mr. Pettaway and others had a barbeque supper at the house; and at approximately 11:00 PM that night Joseph Lee Pettaway left the house along with others.

13. Later that night, in the early morning hours of Sunday, July 8, 2018, and only several hours after Joseph Lee Pettaway had previously left the house, the Montgomery Police Department received an anonymous report that there appeared to be an unknown person inside the house.

14. MPD policemen, Defendant Does 1-8, which included a canine unit and at least one police dog and handlers, went to the house to investigate this report.

15. At the time that MPD policemen Defendant Does 1-8 arrived at the house on Cresta Circle in the early morning hours of July 8, 2018, they had no reliable information or evidence regarding the reported unknown person's (a) identity, (b) right or license to be in the house, (c) purpose for being in the house, (d) activities in the house, or (e) possession of any weapon.

16. Upon arriving at the house, MPD policemen Defendant Does 1-8 did not go into the house to investigate, but instead shouted for whoever was inside the house to come out.

17. Joseph Lee Pettaway, who was in the house, either did not hear these shouts or if he did hear them, did not respond to them in any manner audible to Defendant Does 1-8.

3

18. MPD police Defendant Does 1-8 released into the house, unaccompanied, unattended and uncontrolled by any police handler, a large police dog which was trained to attack persons with his teeth.

19. MPD police Defendant Does 1-8 released the dog for the purpose, with the intent, and with the knowledge that the dog would attack the unknown person in the house—man, woman, or child—with its teeth.

20. At no time prior thereto nor prior to Joseph Lee Pettaway's subsequent death that night did Mr. Pettaway:

      a. actively resist or threaten MPD police,

      b. give any indication or basis for reasonable suspicion he was armed, or

      c. attempt to flee from MPD police.

21. At the time MPD police Defendant Does 1-8 released the police dog into the house, they had no reliable information or evidence that the unknown, unidentified person in the house:

      a. was a man, woman or child,

      b. was committing or had committed any serious or violent criminal offense,

      c. had any criminal intent,

      d. was armed with any type of weapon, or

      e. posed any immediate danger to MPD police or others.

22. Prior to releasing the police dog into the house, MPD police Defendant Does 1-8 did not employ any other less dangerous or less violent actions, means, methods, or equipment to:

      a. investigate any further prior to the release of the dog or

      b. determine whether it was a man, woman or child in the house or

      c. determine the identity of the person in the house or

      d. determine the person's purpose for being in the house or

      e. determine the person's license or right to be in the house or

      f. determine whether the person was armed with any weapon or

     g. determine whether the person posed any danger to anyone, or

     h. have the man, woman or child in the house peaceably leave the house.

23. MPD police Defendant Does 1-8 released the police dog into the house unaccompanied by a handler and without any effective means of controlling the dog or the violent attack that Defendant Does 1-8 knew the dog would and did make on Mr. Pettaway, the person in the house, i.e., the dog was not on a leash, nor was the dog subject to any other effective timely means of control by its assigned handler nor by any member of the MPD.

24. As the MPD police Defendant Does 1-8 expected, intended, and knew that it would, the police dog ferociously and unrelentingly attacked Joseph Lee Pettaway within the small, confined space of the house by ripping and tearing at Mr. Pettaway without the MPD police having any effective means of controlling or restraining or ceasing the vicious attack of the police dog.

25. From the screams and/or pleas of Mr. Pettaway heard by MPD police during the attack Defendant Does 1-8, they knew that the police dog was attacking Joseph Lee Pettaway and knew that he was being violently injured by the dog, i.e., he was being mauled and his flesh was being torn and ripped by the police dog; and that until police stopped this violent attack, the police dog would continue to maul and violently attack, injure, and tear at Mr. Pettaway with its teeth.

26. After the police dog began attacking Mr. Pettaway inside the house, MPD police Defendant Does 1-8 allowed the police dog to continue this violent attack on Mr. Pettaway, during which time no MPD policeman entered the house and intervened or took any actions that effectively restrained or ceased the police dog's attack on Mr. Pettaway.

27. During the police dog attack, it was not possible for Mr. Pettaway to surrender to the police since there were no policemen present inside the house where the dog attack was occurring.

28. The dog's attack caused lacerations to Mr. Pettaway's body, the most severe of which occurred when the police dog's teeth ripped into Mr. Pettaway's groin area and severed the femoral artery approximately where Mr. Pettaway's leg joined his body.

29. The violent severing of Mr. Pettaway's femoral artery by the police dog's teeth during this violent attack resulted in Mr. Pettaway's death from exsanguination or loss of blood and/or shock.

## FIRST CLAIM FOR RELIEF

### Unlawful and Excessive Force
### Fourth and/or Fourteenth Amendment Violations, §1983 liability

30.  Plaintiffs reallege all of the allegations of the preceding paragraphs 1 through 29.

31.  The release of a police dog with the knowledge or intent that the dog will attack a citizen is a use of force subject to the constraints of the Fourth and/or Fourteenth Amendments to the U.S. Constitution.

32.  Under clearly established law, the use of force by Does 1-8 in the manner and in the circumstances of this police dog attack by, including:

> a. the unrestrained and uncontrolled release of the police dog into a confined space, unattended by any policeman
>
> b. with knowledge and/or intent that the dog would attack any man, woman or child within that confined space,
>
> c. who was not fleeing from, nor threatening any police or other persons and
>
> d. who police had no knowledge or reliable information was committing or had committed any crime, nor who posed any immediate threat to the safety of the MPD policemen or others, and
>
> e. with knowledge that the police dog would continue to attack, maul, lacerate, and violently injure the citizen until the dog was restrained,
>
> f. coupled with delay, after the unknown person was known to have been attacked by the dog, in entering the house to restrain or disengage the police dog from this attack

was a use of force that in these circumstances was unwarranted, clearly excessive, unlawful, and in violation of the Fourth Amendment to the U.S. Constitution.

33.  This unwarranted, excessive, and unlawful use of force in violation of the Fourth Amendment was a proximate cause of the death of Joseph Lee Pettaway.

WHEREFORE Plaintiffs demand judgment against MPD police Defendant Does 1-8 in such sum as the jury may reasonably determine, for the costs of this action, for a reasonable

6

attorney's fees pursuant to 42 U.S.C. §1988, and such further additional, necessary or proper relief the Court deems appropriate.

## SECOND CLAIM FOR RELIEF

Deliberate Indifference to Life-Threatening Wounds
Fourth and/or Fourteenth Amendment Violations, §1983 liability

34. Plaintiffs reallege and incorporate all allegations of paragraphs 1. through 33.

35. Prior to July 7, 2018, MPD police Defendant Does 1-15 and Defendant Finley knew:

> a. When police dogs and their handlers are transported to an incident site, it is for the purpose, in preparation for, and with the knowledge that a police dog may or will likely be used to attack a citizen.

> b. In the event that a police dog attacks a citizen, the attacked citizen will almost always sustain injuries from the dog's attack, including lacerations, i.e., cuts or tears, of the citizen's flesh, and the resulting loss of blood.

> c. The length of the time that a police dog is allowed to continue its attack on the citizen will increase the extent, degree and seriousness of the citizen's injuries and will increase the danger to the life and well-being of the citizen caused by these lacerations and other injuries that the dog inflicts.

> d. A police dog left unattended and uncontrolled in its attack on a citizen, even for less than a minute, can result in serious, even fatal injuries. This fact is known or should be known by every competent (i) police chief, (ii) supervisory or managerial policeman, and (iii) policeman employed in a police canine unit.

> e. The length of the time between the infliction of injuries caused by the ripping and tearing of the flesh of the attacked citizen and the provision of medical care to the attacked citizen for these injuries is critical; the longer this length of time is, the greater the extent, degree, and seriousness of the injuries to the citizen and the danger to the life and well-being of the citizen caused by these lacerations and other injuries that the dog inflicts will be.

f. Police dog attacks will in many instances result in lacerations, torn flesh, injuries and loss of blood that if not promptly treated by EMTs, doctors, or other medical professionals, are life-threatening.

36.   Neither MPD police Defendant Does 1-15 nor Defendant Finley summoned or directed that any trained emergency medical care personnel accompany MPD policemen to the house; and EMT personnel were summoned to the house only after the police dog attack. Consequently, there was no trained medical personnel on site to immediately treat the injuries that MPD police Defendant Does 1-15 and Defendant Finley knew would be inflicted on anyone attacked by their police dog.  Rather, provision of trained medical care to Mr. Pettaway would and did have to await the MPD's summoning of EMT personnel and their travel to the house.

37.  After the police dog attack, Mr. Pettaway's torn flesh, bleeding wounds and profuse loss of blood were obvious.  The MPD police Defendant Does 1-8 observed or should have observed Mr. Pettaway bleeding profusely from lacerations inflicted by their dog, including loss of blood from Mr. Pettaway's femoral artery.  MPD police Defendant Does 1-8 thereby had direct and immediate knowledge that Mr. Pettaway's life was in danger if his bleeding was not stopped or substantially retarded immediately, i.e., that unless immediate emergency measures were taken to stop or retard his bleeding, Mr. Pettaway would die.

38.  In July, 2018, it was clearly established law that persons have a right to timely emergency medical care when law enforcement personnel inflict or cause serious, life-threatening injuries to be inflicted upon them. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

39.  Defendant Finley MPD police Defendant Does 1-15 violated Mr. Pettaway's constitutional rights and/or were deliberately indifferent to those rights by failing to require medically trained personnel to be dispatched or to accompany the police canine unit to 3809 Cresta Circle in order to be prepared to administer trained medical treatment to any person in the house who police knew or reasonably should have anticipated would suffer dog bite injuries, loss of blood and other injuries, and would therefore be subject to serious injury or death unless trained medical care was not provided in timely fashion.

8

40.  These failures constitute deliberate indifference to Mr. Pettaway's safety and well-being and Mr. Pettaway's imperative need for immediate, on-site, trained medical personnel to administer trained medical treatment.

41.  When obvious common sense actions, such as stopping or retarding loss of blood from a wound caused by police prior to the arrival of trained medical personnel, are required to prevent the death of a person upon whom such an injury has been inflicted, police violate the Fourth Amendment by failing to take and failing to be prepared to take immediate emergency measures and are thereby deliberately indifferent to a known danger to the life or well-being of the person they have caused injury to.

42.  The failure of law enforcement personnel to act in such circumstances, i.e., with knowledge of a serious, life-threatening injury, failing to take common sense, obvious actions to prevent the arrestee's death, shocks the conscience, constitutes deliberate indifference and violates the Fourteenth Amendment.

43. This deliberate indifference of MPD police Defendant Does 1-15, coupled with their deliberate indifference to the immediate need to take common sense measures to prevent Joseph Lee Pettaway's death from his life threatening injuries they had just caused and the immediate need to summon trained medical personnel to administer medical treatment Joseph Lee Pettaway to prevent his further loss of blood was a proximate cause of his death.

WHEREFORE Plaintiffs demand judgment against MPD police Defendant Does 1-12 and Defendant Finley in such sum as the jury may reasonably determine, for the costs of this action, for a reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further additional, necessary or proper relief the Court deems appropriate.

### THIRD CLAIM FOR RELIEF

Failure to enact and enforce policies and procedures applicable to use of police dogs
Fourth and/or Fourteenth Amendment Violations, §1983 liability

44.  Plaintiffs reallege and incorporate all allegations of paragraphs 1. through 43.

45.  Defendant Ernest N. Finley, Jr., was the Chief of Police for the City of Montgomery for several years prior to Mr. Pettaway's death.  Defendant Does 13-15 were in July, 2018, MPD

policemen who were also charged with or responsible for management of the City of Montgomery Police Department.

46. As the Chief of Police, defendant Finley, together with MPD Defendant Does 13-15, were the chief policy makers for the City of Montgomery Police Department; and made policies and procedures for the conduct of all aspects of the operation of the City of Montgomery Police Department, including its canine unit.

47. Prior to July 8, 2018, defendant Ernest N. Finley, Jr., and Does 13-15 failed to enact, implement and enforce reasonable, common sense policies and procedures for the MPD regarding the following matters:

> a. the circumstances in which the use of police dogs to attack citizens is lawful and authorized.
>
> b. the use of physical, electronic or other restraints to control police dogs when used to attack citizens.
>
> c. summoning and requiring, prior to release of police dogs to attack a citizen, the presence of trained medical care at the location at which police dogs are to be released to attack citizens.
>
> d. administration of rudimentary, common sense measures by MPD policemen to stop or retard blood loss to citizens whose flesh is mauled, lacerated, or torn by police dogs until trained medical care professionals can supply medical care.
>
> e. the prompt and timely summoning of medical care personnel to attend and treat persons injured by actions of MPD policemen and police dogs.

48. A known, expected, and widely acknowledged consequence of a police department's use of police dogs to seize or apprehend citizens is that the citizens who are attacked by police dogs will suffer lacerations and other related injuries, virtually all of which will result in blood loss and shock, among other types of injuries.

49. Under well settled and clearly established law, the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen.*

*Hosp.*, 463 U.S. 239, 244 (1983); *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

50. This duty includes the duty to ensure the timeliness of such medical treatment—to provide such medical care citizens seriously injured by police within the time necessary to be efficacious. Otherwise, the duty is meaningless.

51. The failure of defendant Finley and Does 13-15 to promulgate, enact, and enforce reasonable, adequate policies and procedures necessary to discharge these duties and to treat injuries that they knew or reasonably should have known would be inflicted on persons upon whom police dogs are unleashed or released to attack constitutes deliberate indifference to a known risk and danger to the lives and well-being of those citizens.

WHEREFORE Plaintiffs demand judgment against Ernest N. Finley, Jr., and Does 13-15 in such sum as the jury may reasonably determine, for the costs of this action, for a reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further additional, necessary or proper relief the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF

Failure to Train regarding the use of police dogs
Fourth and/or Fourteenth Amendment Violations, §1983 liability

52. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 51 of this Complaint with the same force and effect as if fully set forth herein.

53. The training provided to MPD policemen, including Does 1-12, by the City of Montgomery, by Defendant Finley and by Does 9-15 was not adequate to train MPD policemen how to handle the anticipated or reasonably anticipatable situations resulting from the release of police dogs to attack citizens.

54. In failing to properly train MPD policemen, the City of Montgomery, Defendants Finley, and Does 9-15 were deliberately indifferent to the consequences of such failure.

55. The failure of these defendants to provide adequate training caused the deprivation of Plaintiff's decedent's rights and his death; that is, Defendants' failure to train is so closely related to the deprivation of the Plaintiff's decedent's rights and his death as to be the moving force that caused his death.

WHEREFORE Plaintiffs demand judgment against Ernest N. Finley, Jr., and Does 9-15 in such sum as the jury may reasonably determine, for the costs of this action, for a reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further additional, necessary or proper relief the Court deems appropriate.

### FIFTH CLAIM FOR RELIEF

State law negligence claim

56. Plaintiffs reallege and incorporate all allegations of paragraphs 1. through 55.

57. The acts and omissions of Defendants Finley and Defendants Does 1-15, acting as agents and employees of Defendant City of Montgomery, hereinbefore alleged constituted negligence.

58. These Defendants' negligence was a proximate cause of the wrongful death of Joseph Lee Pettaway.

WHEREFORE Plaintiffs demand judgment against City of Montgomery, Ernest N. Finley, Jr., and Does 9-15 in such sum as the jury may reasonably determine, for the costs of this action, and such further additional, necessary or proper relief the Court deems appropriate.

Griffin Sikes, Jr.
Attorney for Plaintiff
Post Office Box 11234
Montgomery, Alabama 36111
Phone: 334.233.4070
E-mail: sikeslawyer@gmail.com

/s/ H. E. Nix, Jr.

H. E. Nix, Jr.
Attorney for Plaintiff
7515 Halcyon Pointe Drive
Montgomery, AL 36117
Phone: 334.279.7770
E-mail: cnix@nixattorney.com

12

<u>Jury Demand</u>

Plaintiff demands trial by jury of these claims.

_____
Of Counsel

<u>Note to Clerk and Process Server</u>:

Please serve the summons and complaint together with the attached "Motion for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conference" on defendants Ernest N. Finley, Jr. and City of Montgomery.

<u>Please serve defendants Ernest N. Finley, Jr. and City of Montgomery at the following addresses</u>:

Police Chief Ernest N. Finley, Jr.
Montgomery Police Department
320 North Ripley Street
Montgomery, AL 36104

Ms. Brenda Gale Blalock
Clerk, City of Montgomery
103 North Perry Street
Montgomery, AL 36104