IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WALTER PETTAWAY
as administrator of the Estate
of Joseph Lee Pettaway, deceased,

        Plaintiffs,

*versus*

NICHOLAS D. BARBER
and MICHAEL D. GREEN,

        Defendants.

Civil Action
2:19-cv-0008-GMB

Jury Trial Demanded

### FIRST AMENDED COMPLAINT

Nature of the Action, Jurisdiction and Venue

1. This is a civil action brought pursuant to 42 U.S.C. §1983, et seq., to recover damages for violations of the Fourth or Fourteenth Amendments to the U.S. Constitution by City of Montgomery policemen Nicholas D. Barber and Michael D. Green, acting under color of state law, which were a proximate cause of the death of Joseph Lee Pettaway on July 8, 2018, in Montgomery, Alabama.

2. This Court has jurisdiction of this civil action and the claims made herein pursuant to 28 U.S.C. §1343(3).

3. This civil action is properly venued in the Northern Division of this Court pursuant to 28 U.S.C. §1391.

Nature of the Action, Jurisdiction and Venue

4. This is a civil action brought pursuant to 42 U.S.C. §1983, et seq., to assert claims and recover damages for violations of the Fourth or Fourteenth Amendments to the U.S. Constitution by Defendants City of Montgomery policemen Nicholas D. Barber and Michael D. Green, who

1

while acting under color of state law, proximately caused of the death of Joseph Lee Pettaway on July 8, 2018, in Montgomery, Alabama; and to assert a pendant state law wrongful death claim arising therefrom.

5. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §1321 and 1343(a)(3)-(4) as Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth or Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law wrongful death claim pursuant to 28 U.S.C. §1367(a), because that claim arises out of the same operative facts and is so related to the federal claims that it forms a part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court under 28 U,S.C. §1391(b) because all defendants reside in the Middle District of Alabama and all incidents, events, actions, and occurrences giving rise to these causes of action occurred in the Middle District of Alabama.

Parties

7. Plaintiff Walter Pettaway is the brother of Joseph Lee Pettaway, deceased, and is the duly appointed Administrator of the Estate of Joseph Lee Pettaway, deceased.

8. Defendants Nicholas D. Barber and Michael D. Green are Montgomery Police Department (MPD) policemen who, acting under color of law and within the line and scope of their duties for the MPD, went to and were present at 3809 Cresta Circle on July 8, 2018, when a MPD police dog, which they intentionally released and commanded to attack Joseph Lee Pettaway, did attack and kill Joseph Lee Pettaway at that address.

9. All claims made herein are made against defendants in their individual capacity; defendants are alleged to have acted under color of state law in all acts and omissions alleged herein and are alleged to have acted at all times within the line and scope of their authority.

Allegations Common to All Claims

10. During the spring and summer of 2018, Joseph Lee Pettaway assisted in making repairs to a small, one-story, approximately 960 square foot, six-room house located at 3809 Cresta Circle ("'the house") in Montgomery, Alabama. In July, 2018, both the power company and the

2

Montgomery Water Works Board had discontinued or turned off their services to the house and it was not being inhabited as a full time residence.

11. On Saturday, July 7, 2018, Mr. Pettaway worked at the house doing primarily clean-up and yard work.

12. After completing work that Saturday evening, Mr. Pettaway and at least one other worker at the house grilled their supper on an outdoor barbeque grill and ate supper at the house. All others besides Mr. Pettaway left the house that night around 11:00 PM. It is not known whether Mr. Pettaway left the house prior to arrival of Defendants Barber and Green at the house approximately two hours later.

13. Approximately two hours later that night, the Montgomery Police Department received a telephone call report from an informant that there was an unknown person inside the house.

14. Upon information and belief, at the time of this telephone call the identity of this informant was either not known to and/or was not verified by the MPD and was therefore effectively an anonymous informant; was not known to be a proven and reliable informant; and had not previously provided verified truthful and trustworthy information to the MPD.

15. Several Montgomery policemen, including Defendants Barber and Green, and the police dog assigned to Defendant Green went to the house to investigate the report of this unknown person's presence in the house.

16. At the time that Defendants Barber and Green arrived at the house and at the time they released the police dog into the house, with regard to the person reportedly in the house, Defendants Barber and Green had no reliable information or evidence about that alleged person's:

      (a) identity,

      (b) right or license to be in the house,

      (c) purpose for being in the house,

      (d) activities in the house,

      (e) possession of any weapon, or

      (f) danger he or she posed to anyone.

17. Upon arriving at the house, Defendants Barber and Green did not go into the house to investigate, but instead shouted for whoever was inside the house to come out.

18. Joseph Lee Pettaway, who was in the house, either did not hear these shouts or if he did hear them, did not respond to them in any manner audible to Defendants Barber and Green.

19. Without any additional information other than this anonymous and unverified report that an unknown man, woman or child was in the house, Defendant Barber released a large police dog which was trained to attack persons with his teeth into the house; this police dog was unaccompanied, unattended and was not subject to control by Defendants Barber or Green or any other policeman after the dog entered the house.

20. The deployment or release of this police dog into the house under these circumstances violated the MPD's own guidelines for its canine unit division, was contrary to established principles and guidelines for canine units that are adhered to by responsible, law-abiding police departments, and was an unlawful and excessive use of force in violation of the Fourth or Fourteenth Amendment.

21. Defendant Green and possibly other Montgomery policemen who also lacked any reliable information or evidence regarding the matters alleged in paragraph 15, acquiesced, and at the very least, tacitly approved and authorized this use of force, i.e., the release into the house of the large police dog which was trained to attack persons with his teeth.

22. Defendants Barber and Green released and/or approved or acquiesced in the release of the police dog into the house for the purpose, with the intent, and with the knowledge that the dog would attack the unknown person in the house—man, woman, or child—with its teeth.

23. At no time prior to Joseph Lee Pettaway's death that night did Mr. Pettaway:

    a. actively resist or make any threats to MPD police,

    b. give any basis for reasonable suspicion he was armed or dangerous, or

    c. attempt to flee from MPD police.

24. At the time Defendants Barber and Green released the police dog into the house, they had no reliable information or evidence that the unknown, unidentified person in the house:

    a. was a man, woman or child,

    b. was committing or had committed any serious or violent criminal offense,

    c. had any criminal intent,

    d. was armed with any type of weapon, or

    e. posed any immediate danger to MPD police or others.

  25. Prior to releasing the police dog into the house, Defendants Barber and Green did not employ any other less dangerous or less violent actions, means, methods, or equipment to:

    a. investigate any further prior to the release of the dog or

    b. determine whether it was a man, woman or child in the house or

    c. determine the identity of the person in the house or

    d. determine the person's purpose for being in the house or

    e. determine the person's license or right to be in the house or

    f. determine whether the person was armed with any weapon or

    g. determine whether the person posed any danger to anyone, or

    h. have the man, woman or child in the house peaceably leave the house.

  26. Defendants Barber and Green released or authorized the release of the police dog unaccompanied and unattended into the house without any effective means of controlling the dog while in the house or of controlling the violent attack that Defendants knew the dog would make and which the dog did make on Mr. Pettaway, i.e., the dog was not subject to any effective and timely means of control by Defendants Barber and Green.

  27. As the MPD police Defendants Barber and Green expected, intended, and knew that it would, the police dog ferociously and unrelentingly attacked Joseph Lee Pettaway within the small, confined space of the house by ripping and tearing at Mr. Pettaway without the MPD police having any effective means of timely control or restraint or cessation of the vicious attack of the police dog.

  28. From the screams and/or pleas of Mr. Pettaway heard by Defendants Barber and Green during the attack, they knew that the police dog was attacking Joseph Lee Pettaway and knew that he was being violently injured by the dog, i.e., he was being mauled and his flesh was being torn and ripped by the police dog; and that until Defendants Barber and Green stopped this violent attack, the police dog would continue to maul and violently attack, injure, and tear at Mr. Pettaway with its teeth.

29. After the police dog began attacking Mr. Pettaway inside the house, the police dog continued its violent attack on Mr. Pettaway until his femoral artery was severed, prior to which neither Defendants Barber and Green nor any other MPD policeman entered the house, intervened or took any actions that effectively restrained or ceased the police dog's attack on Mr. Pettaway.

30. The dog's attack caused lacerations to Mr. Pettaway's body, the most severe of which occurred when the police dog's teeth ripped into Mr. Pettaway's groin area and severed the femoral artery approximately where Mt. Pettaway's leg joined his lower torso.

31. The violent severing of Mr. Pettaway's femoral artery by the police dog's teeth during this violent attack was a proximate cause of Mr. Pettaway's death from exsanguination or loss of blood and/or shock.

## FIRST CLAIM FOR RELIEF

Unlawful Seizure
Fourth Amendment violation, §1983 liability

32. Plaintiff realleges and incorporates every allegation contained in paragraphs 1 through 31.

33. At the time Defendants Barber and Green arrived at 3809 Cresta Circle, they had no reliable information or evidence and no reliable basis for a reasonable suspicion that there was anyone inside the house at that address or that any such person that may be in the house was committing or had committed any serious criminal offense or was armed or posed any immediate danger to anyone.

34. There was no lawful basis to make a seizure of Joseph Lee Pettaway, whether such seizure was effected as a warrantless arrest or as a *Terry* stop.

35. The seizure of Joseph Lee Pettaway which was initiated by the uncontrolled and unaccompanied release of a violent police dog and which was intended to be effected by the dog's violent attack on Mr. Pettaway with the dog's teeth was an unreasonable seizure in violation of the Fourth Amendment.

36. Defendants Barber and Green's unlawful seizure and violation of Joseph Lee Pettaway's Fourth Amendment rights was a proximate cause of or the moving force behind the death of Joseph Lee Pettaway.

## SECOND CLAIM FOR RELIEF

Unlawful and Excessive Use of Force
Fourth or Fourteenth Amendment Violations, §1983 liability

37. Plaintiffs reallege all of the allegations of the preceding paragraphs 1 through 30.

38. The release of a police dog with the knowledge or intent that the dog will attack a citizen is a use of force subject to the limitations and constraints of the Fourth or Fourteenth Amendment to the U.S. Constitution.

39. Under clearly established law, the use of force by Defendants Barber and Green in the manner and in the circumstances of this police dog attack, including:

> a. the unrestrained and uncontrolled release of the police dog into a confined space,
>
> b. with knowledge and/or intent that the dog would attack any man, woman or child within that confined space, unattended by any policeman or handler,
>
> c. on a person who was not fleeing from, nor threatening any police or other persons and
>
> d. who police had no knowledge or reliable information was committing or had committed any violent or serious crime, nor who posed any immediate threat to the safety of the MPD policemen or others, and
>
> e. with knowledge that the police dog would continue to attack, maul, lacerate, and violently injure the citizen until the dog was restrained,
>
> f. coupled with delay, after the unknown person was known to have been attacked by the dog, in effectively restraining or disengaging the police dog from this attack
>
> g. was, in these circumstances, an unwarranted, excessive, and unlawful use of force that violated the Fourth or Fourteenth Amendment to the U.S. Constitution.

40. Defendants Barber and Green's unwarranted, excessive, and unlawful use of force in violation of the Fourth or Fourteenth Amendment was a proximate cause of the death of Joseph Lee Pettaway.

WHEREFORE Plaintiffs demand judgment against Defendants Barber and Green in such sum as the jury may reasonably determine to punish them for causing the wrongful death of Mr. Pettaway, for the costs of this action, for reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such further additional, necessary or proper relief the Court deems appropriate.

THIRD CLAIM FOR RELIEF

Wrongful Death under state law

§6-5-410, Code of Alabama

41. Plaintiff realleges and incorporates the allegations contained in paragraphs

42. Defendants Barber and Green were guilty of negligence in the aforesaid acts and omissions.

43. The negligence of Defendants Barber and Green was a combined and concurring proximate cause of the death of Joseph Lee Pettaway.

WHEREFORE Plaintiffs demand judgment against Defendants Barber and Green for punitive damages in such sum as the jury may determine to be necessary and appropriate to punish them and to deter them and others from such negligence in the future, for the costs of this civil action and such other further additional, necessary or proper relief the Court deems appropriate.

/s/ Griffin Sikes, Jr.

Griffin Sikes, Jr.
Attorney for Plaintiff
Post Office Box 11234
Montgomery, Alabama 36111
Phone: 334.233.4070
E-mail:  sikeslawyer@gmail.com

/s/ H. E. Nix, Jr.

H. E. Nix, Jr.
Attorney for Plaintiff
7515 Halcyon Pointe Drive
Montgomery, AL 36117
Phone: 334.279.7770
E-mail: cnix@nixattorney.com

Jury Demand

Plaintiff demands trial by jury of all issues in this cause.

/s/ Griffin Sikes, Jr.

Of Counsel