```
 1            IN THE UNITED STATES DISTRICT COURT

 2            FOR THE MIDDLE DISTRICT OF ALABAMA

 3                    NORTHERN DIVISION

 4

 5    WALTER PETTAWAY, as
      Administrator of the
 6    Estate of Joseph Lee          CIVIL ACTION NUMBER
      Pettaway, deceased,
 7                                      2:19-CV-0008
             Plaintiff,
 8                                   DEPOSITION OF:
      VS.
 9                                ERNEST N. FINLEY, JR.
      NICHOLAS D. BARBER
10    and MICHAEL D. GREEN,

11           Defendants.

12

13            S T I P U L A T I O N S

14        IT IS STIPULATED AND AGREED, by and between

15    the parties through their respective counsel, that

16    the deposition of:

17            ERNEST N. FINLEY, JR.

18    may be taken before Nancy S. Holland, Commissioner

19    and Notary Public, State at Large, at the law

20    office of H.E. Nix, 7505 Halcyon Pointe Drive,

21    Montgomery, Alabama, on the 29th day of June, 2021,

22    commencing at approximately 9:15 a.m.

23

24

25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19     Q.      All right.  You didn't become Police

20  Chief here in Montgomery until January of 2015?

21  A.          Yes, sir.

22  Q.          Okay.  What did you do between 2012

23  and 2015?

24  A.          I'm sorry.  It should be '14.

25  Q.          Okay.  '14.

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 11

```
1    A.          December of '14.
2    Q.          All right.  And you were the Police
3    Chief for the City of Montgomery until about three
4    weeks ago.
5    A.          That's correct.
6    Q.          You resigned as Police Chief on June
7    the 8th?
8    A.          That's correct.
9    Q.          And you became Police Chief in January
10   of '15.
11   A.          Yes, sir.  That's correct.
12   Q.          Okay.  That's about six and a half
13   years there that you were Police Chief for the City
14   of Montgomery.
15   A.          That's correct.
16
17
18
19
20
21
22
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 12

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021

```
1
2
3
4
5
6
7
8
9
10
11   Q.           Okay.   Was 3.3.5 the official written
12   policy of the Montgomery Police Department on July
13   8, 2018, the night of Mr. Pettaway's death?
14   A.           Yes.
15
16
17
18
19
20
21
22
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 25

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Q.            Did 3.3.5 require that appropriate

24   medical aid or care or first aid be provided to Mr.

25   Pettaway on July 8th after he was attacked by a
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 33

```
 1   police dog?
 2               MR. EAST:  Object to form.
 3   A.          According to policy, we notified --
 4   Q.          No.  Did the policy require --
 5   A.          Yes.
 6   Q.          Okay.  The policy required the
 7   Montgomery Police Department to provide appropriate
 8   medical care to Mr. Pettaway.
 9               MR. EAST:  Object to form.
10   Q.          Correct?
11               MR. EAST:  The policy says what it
12   says.
13               MR. SIKES:  I'm asking him.
14   Q.          (By Mr. Sikes) Is that your
15   understanding that it does?
16   A.          The policy ensures that we put that
17   request, we make that request with medical
18   personnel.
19   Q.          All right.
20               MR. NIX:  Did you say with medical
21   personnel?
22   A.          With medical personnel, fire
23   department.
24   Q.          Now, again, you haven't seen it, so I
25   guess -- I will tell you that between the time that
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 34

```
 1    the police dog was pulled off of Mr. Pettaway that
 2    there was about maybe 14 or 15 minutes before
 3    anybody, anybody touched Mr. Pettaway.  So the
 4    video, I think, shows that no Montgomery Police
 5    Department police officer provided any first aid.
 6    Do you know any different than that?
 7                MR. EAST:  Object to form.
 8    A.          No, I don't.
 9    Q.          All right.  Do you agree that if
10    Montgomery Police Department personnel did not
11    provide any first aid to Mr. Pettaway that they
12    violated 3.3.5?
13                MR. EAST:  Object to form.
14    A.          According to the policy, they summoned
15    medical personnel to respond.
16    Q.          Did 3.3.5 require Montgomery Police
17    Department personnel to provide themselves,
18    policemen to provide any first aid or care, medical
19    care of any kind to a person injured by the police?
20    A.          The first aid that they provided was
21    to contact medical personnel to respond.
22    Q.          I appreciate that, but I will ask you
23    if you can answer my question.  And that is, did
24    the Montgomery Police Department policy require the
25    police themselves to provide any hands-on first aid
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 35

```
 1    or medical attention to persons that were injured

 2    such as Mr. Pettaway?

 3               MR. EAST:  Asked and answered.

 4    A.         They're not trained to do that triage,

 5    provide that type of service, so they follow

 6    policy.

 7    Q.         We'll get into that.  We're going to

 8    get into that in a minute, but I need an answer to

 9    my question.  Did 3.3.5 require policemen

10    themselves to provide first aid, appropriate

11    medical care in appropriate circumstances?

12    A.         According to the policy, they

13    contacted the medical personnel.  That's the best

14    I'm going to give you.  I mean, you know, that's

15    what I'm going to give you.

16    Q.         The policy didn't require them to

17    provide any medical first aid care themselves?

18    A.         They contacted medical personnel.

19    Q.         Is that all that they're required to

20    do is contact --

21    A.         According to the policy, they follow

22    the policy.

23    Q.         Is that all that they're required to

24    do is make a call?

25    A.         According to the policy.
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 36

1    Q.          That's all that they're required to do
2    according to the policy.
3    A.          According to the policy.  They follow
4    the policy.
5    Q.          Okay.  So they had no obligation to
6    themselves take any effort to aid Mr. Pettaway in
7    any way medically, correct?
8    A.          They followed the policy.
9               MR. NIX:  Please just answer the
10   question.
11   Q.          Would you answer the question, please,
12   sir?  Again, we can be here as long as you want.
13   A.          I'm here, too.
14   Q.          Well, again, did it require them to
15   do --
16   A.          They followed the policy.
17   Q.          You've said that.
18   A.          They followed the policy.
19   Q.          I know you think that.  What I'm
20   trying to get at is what the policy is.  Did it
21   require them to do hands-on first aid?
22   A.          They followed the policy.
23              MR. SIKES:  Certify this.
24   Q.          We can get you back if you'd like and
25   I can get you to answer the question.  I think that

1-888-326-0594 depos@bainandsassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 37

1   you've answered it, but it's a very simple thing.

2   Either this 3.3.5 required the police to take

3   reasonable steps, first aid rendering themselves to

4   persons injured or it didn't require them to do

5   that.  Which is it?

6              MR. EAST:  Objection.  If you think

7   that he's answered it, then it's been asked and

8   answered.  Move on.

9   Q.         Can I have an answer to my question?

10  A.         They followed the policy.

11  Q.         That's not an answer to my question.

12  There are two possibilities.  Again, I'll state it

13  for you, sir.  Either 3.3.5 required police who

14  cause an injury to someone in the course of

15  apprehending them, it requires them to themselves

16  in appropriate circumstances to render first aid

17  themselves and not simply make a call.  That's one

18  possibility.

19             The other is the only obligation that

20  they have is to promptly summons medical care.  I'm

21  asking you which of those two is the policy?

22             MR. EAST:  Object to form.

23  Q.         Which of those two?

24  A.         I think according to the policy to

25  summons medical care, and that's what they did.

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 38

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021

```
1   Q.              That's the limit of what they're
2   required to do, correct?
3                   MR. EAST:  Object to form.
4   A.              Yes.
5   Q.              Okay.  Your testimony is that MPD
6   policy 3.3.5 did not require MPD policemen who
7   cause say a life-threatening injury such as
8   arterial bleeding, they don't have any obligation
9   to themselves provide first aid to stop or reduce
10  the flow of blood necessary to avoid loss of life,
11  correct?
12                  MR. EAST:  Object to form.
13  A.              Correct.
14  Q.              You were the policymaker who made or
15  created or put 3.3.5 into effect as MPD policy,
16  correct?
17  A.              Correct.
18
19
20
21
22
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 39

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021

```
1    Q.          Okay.  What actions are the ones that
2    you know of or can think of that would be
3    appropriate if somebody -- if you came up on
4    somebody and they were bleeding heavily from a
5    major artery?
6              MR. EAST:  Object to form.  This is
7    calling for a whole lot of speculation.
8    Q.          Go ahead.
9    A.          I use common sense, but I would just
10   step back and call for medical assistance.
11   Q.          Would you apply any pressure to the
12   wound to cause --
13   A.          I would not.
14   Q.          Would you apply a tourniquet?
15   A.          I would not.
16   Q.          Would you pack the wound with
17   available cloth or any other packing to retard
18   bleeding?
19   A.          I would not.
20   Q.          Okay.  In 2018, were Montgomery Police
21   Department policemen issued any medical equipment
22   or first aid equipment or supplies?
23   A.          No, sir.
24   Q.          Are any of the Montgomery Police
25   Department's patrol cars equipped with medical or
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 51

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021

```
 1    first aid equipment or supplies?
 2    A.          No, sir.
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23    A.
24    Q.
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 52

Walter Pettaway vs Nicholas D. Barber and Michael D. Green

Ernest N. Finley, Sr.
6/29/2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15   Q.         Well, let me ask you that.  Well, I'll

16   get into that in just a second.

17            You're aware generally that an arterial

18   bleed or a major blood vessel bleed, if not

19   addressed promptly, can cause death by loss of

20   blood, correct?

21   A.         Yes.

22   Q.         Okay.  And you've known that since

23   you've been the Police Chief in Montgomery, since

24   2015.

25   A.         Yes.

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 54

1    Q.          All right.  Have you ever personally

2    had a case -- You were a police officer for 29

3    years you say?

4    A.          Yes.

5    Q.          Have you ever had a case where a

6    person that was injured during an arrest had an

7    arterial or other major blood vessel ruptured or

8    torn or cut?

9    A.          I can't recall.

10   Q.          Okay.  Would you agree that in

11   arresting and apprehending suspects or persons,

12   citizens, police can cause a broad range of

13   different types of injury?

14              MR. EAST:  Object to form.

15   A.          You said police can cause?

16   Q.          Uh-huh.

17   A.          It can happen, yes.

18   Q.          They have to shoot people sometimes

19   and do shoot people at times, correct?

20   A.          That's correct.

21   Q.          All of the kinds of injuries from

22   spraining a wrist or all the ways -- the whole

23   gamut of different types of personal injuries can

24   be caused by Montgomery police officers in the

25   course of making arrests or apprehending persons,

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 55

```
 1   correct?

 2              MR. EAST:   Object to form.

 3   A.         Yes.

 4   Q.         Some are relatively minor and some are

 5   more serious, correct?

 6   A.         Correct.

 7   Q.         And some are life-threatening,

 8   correct?

 9   A.         Correct.

10   Q.         There are certain types of injuries

11   for which first aid or medical care must be given

12   almost immediately in order to prevent death or

13   very serious injury, correct?

14   A.         Correct.

15

16

17

18

19

20

21

22

23

24

25
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 56

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14    Q.          Okay.  Do you know that if a major

15    blood vessel in a person's body is cut or severed

16    or torn and they are bleeding heavily, that

17    person's blood is escaping from their body, that

18    that must be treated immediately?

19                MR. EAST:  Object to form.

20    A.          Yes.

21    Q.          All right.  Do you know how quickly a

22    person can bleed to death from a cut or torn

23    artery?

24    A.          No, sir.

25    Q.          Do you have any judgment about that
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 60

```
 1   amount of time?

 2   A.          No, sir.

 3   Q.          Would you disagree that it can occur

 4   as little as three to five minutes?

 5               MR. EAST:  Asked and answered.

 6   Q.          You wouldn't dispute it, but you can't

 7   confirm it either.  Is that correct?

 8   A.          That's correct.

 9   Q.          Okay.  Let's look at 3.3.5.  There is

10   a sentence on here that states -- I'm looking at C

11   right here.  You've referred to it several times.

12   Would you read --

13   A.          "Medical aid is to be rendered by only

14   those trained or certified to render such aid."

15   Q.          Aren't all police officers in the

16   State of Alabama required to get first aid training

17   before they become police officers?

18   A.          The basic CPR, yes.

19   Q.          And they aren't trained in first aid

20   other than that?

21   A.          No, sir.

22   Q.          And how do you know that?

23   A.          You know, through my training as well

24   as overseeing the academy.  I haven't seen anything

25   more advanced than the basic CPR.
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 61

1   Q.          All right.  Is it your testimony that

2   you know that police officers in the State of

3   Alabama are not trained by APOST to give first aid

4   in a variety of situations other than CPR?

5   A.          They are trained, but the officers at

6   MPD are not -- have not received that APOST

7   additional advanced medical training.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 62

```
 1
 2
 3
 4
 5
 6   Q.          All right.  Would you agree that there
 7   are unavoidable and inevitable delays between when
 8   someone suffers an injury at the hands of the police
 9   somewhere in the City of Montgomery and when these
10   two calls, at least two calls have to be made and
11   then the EMT unit has to go out to the
12   location?  There's an inevitable delay in getting
13   there, correct?
14                MR. EAST:  Object to form.
15   A.          Yes.
16   Q.          Okay.  And do you have an idea of what
17   that average time is?
18   A.          No, sir, I don't.
19
20
21
22
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 79

```
 1                    MR. EAST:  I'll follow up on that.
 2                    MR. SIKES:  Okay.
 3    Q.             (By Mr. Sikes) Lieutenant -- Excuse
 4    me.  I think that he was a sergeant maybe.
 5    Whatever Barber was, Nicholas Barber is no longer
 6    employed as a policeman with the City of
 7    Montgomery, is he?
 8    A.             Correct.  Yes.
 9    Q.             How did it come about that he is no
10    longer employed by the Montgomery City Police
11    Department?
12                    MR. EAST:  Objection to the extent of
13    relevance.
14                    MR. SIKES:  All of those are reserved.
15    Do you know that?
16                    MR. EAST:  You can answer if you know.
17    A.             Some disciplinary infraction that he
18    had unrelated to this event.
19    Q.             (By Mr. Sikes) Was he investigated for
20    misconduct while employed as a Montgomery Police
21    Department policeman?
22    A.             That's correct.
23    Q.             All right.  And was he found guilty
24    after an investigation of that charge of
25    misconduct?
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 80

| | |
|---|---|
| 1 | A.          That's correct. |
| 2 | Q.          Okay.  In fact, there were a couple of |
| 3 | types of misconduct that he was charged with, |
| 4 | correct? |
| 5 | A.          On that one incident, yes.  Correct. |
| 6 | Q.          I think that there were 56 or 57 |
| 7 | different incidents, correct? |
| 8 |              MR. EAST:  Object to form. |
| 9 | A.          From that one investigation, correct. |
| 10 | Yes, sir. |
| 11 | Q.          All right.  Did he misuse his |
| 12 | authority as a Montgomery Police Department |
| 13 | policeman? |
| 14 |              MR. EAST:  Object to the form. |
| 15 | A.          Yes. |
| 16 | Q.          How? |
| 17 | A.          According to that investigation, it |
| 18 | was sustained for misuse of the NCIC.  He ran a |
| 19 | check on an individual that he wasn't authorized to |
| 20 | do so. |
| 21 | Q.          And what did he do with that |
| 22 | information? |
| 23 |              MR. EAST:  Object to the form. |
| 24 | A.          I'm not sure on that.  For personal |
| 25 | use, but there wasn't anything in the investigation |

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 81

```
 1    to depict otherwise than personal use.
 2    Q.           I'm sorry.  I didn't understand that.
 3    A.           Personal use.  It wasn't anything in
 4    the addition to -- An investigation didn't reveal
 5    anything other than it was for personal use.
 6    Q.           Right.  He used -- took confidential
 7    information that was supposed to be used only for
 8    law enforcement purposes and he used it for a
 9    personal purpose, correct?
10    A.           Correct.  Yes, sir.
11    Q.           Okay.  The use of that information for
12    other than law enforcement purposes is a violation
13    of Montgomery Police Department policies and
14    procedures, correct?
15    A.           Correct.
16    Q.           And the use of that information for
17    other than law enforcement purposes also can be a
18    criminal offense, can it not?
19    A.           Yes.
20    Q.           All right.  And has Barber been
21    charged?
22    A.           I don't know.
23    Q.           Do you know whether he's under --
24    currently under investigation?
25    A.           I don't know.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 82

```
 1   Q.          Okay.  What information did he gain
 2   access to and what was the personal use that he
 3   made of it?
 4                MR. EAST:  Object to form.
 5   A.          What I can recall is domestic-related.
 6   His ex was dating this individual that he ran
 7   information on.
 8   Q.          Okay.
 9                (Plaintiff's Exhibit Number 13
10                 was marked for identification)
11   Q.          I'm going to show you composite
12   Exhibit 13.  And I will represent to you that these
13   are records that were produced to us by the
14   Montgomery Police Department.  They all bear Bates
15   numbers at the bottom of them.  Let me let you look
16   at the first page of it.  The first page that I'm
17   looking at, it's Page 1069 at the bottom.  See it
18   stamped there at the bottom?
19   A.          Yes.
20   Q.          Does that refresh your recollection
21   about what Lieutenant -- or Sergeant at that time
22   Barber -- Corporal at that time Barber did?  I'm
23   promoting him.
24   A.          Yes.  Yes.
25   Q.          He had a girlfriend, Raven Hordge, and
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 83

1   he used Montgomery NCIC systems 58 times to conduct

2   research on his ex-girlfriend and her ex-husband,

3   correct?

4   A.          Correct.

5   Q.          He then used that information as a

6   pretense for a traffic stop for Mr. Eldridge,

7   correct?

8   A.          Correct.

9   Q.          And issued him traffic citations.

10  A.          Correct.

11  Q.          Now, Barber at the time was assigned

12  to the canine unit?

13  A.          Correct.

14  Q.          Okay.  But he issued them traffic

15  tickets.  He issued Mr. Eldridge traffic tickets,

16  right?

17  A.          Correct.

18  Q.          And those are the only ones that he

19  issued during that year period, correct?

20  A.          I have to look at the --

21  Q.          I'm just reading it off of there.  It

22  says, "Corporal Barber issued several traffic

23  citations - the only ones he issued during an

24  approximate one-year period."  Do you see that?

25  A.          Yes, sir.

```
 1   Q.          Okay.  This was written to you by
 2   Lieutenant Champlin?
 3   A.          Champlin.
 4   Q.          Champlin?
 5   A.          Yes.
 6   Q.          Was he in charge of investigating
 7   this?
 8   A.          Yes.  Yes, he was.
 9   Q.          Okay.  And this is June of 2020,
10   correct?
11   A.          Correct.  Yes, sir.
12   Q.          All right.  Let's look at the next
13   page here.  This was to you from Champlin also
14   dated June 12th of 2020, right?
15   A.          Correct.
16   Q.          And do you see the recommendation
17   there is that Barber's employment with the
18   Montgomery Police Department be terminated?
19   A.          Correct.
20   Q.          That was his recommendation?
21   A.          Correct.
22   Q.          All right.  And let's look at the next
23   page, 1068.  It's a memorandum to you from Captain
24   J.W. Hall, correct?
25   A.          Correct.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 85

```
 1   Q.           And it's dated June 2012 (sic) also?

 2   A.           Yes, sir.  Correct.

 3   Q.           And this says that after the

 4   investigation about these violations, they were

 5   found to be substantiated, correct?

 6   A.           Correct.

 7   Q.           All right.  All of this is in June of

 8   2020, right?

 9   A.           Correct.

10   Q.           The next page is Page 1065 and this

11   was a memo or letter -- I don't know what you want

12   to call it.  What do you refer to it as?  A letter?

13   A.           Yes.

14   Q.           A letter from you to Steven Reed, the

15   mayor, correct?

16   A.           Correct.

17   Q.           And --

18   A.           A recommendation of termination.

19   Q.           You recite that Lieutenant Champlin

20   made the recommendation of termination of Barber's

21   employment and you upheld that recommendation,

22   correct?

23   A.           Correct.

24   Q.           So you approved that he be fired or

25   terminated.
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 86

```
 1    A.          Correct.
 2    Q.          All right.  Look at the next page,
 3    1062.  That's a letter to you from Chief Alan
 4    Benefield at APOST on their letterhead, correct?
 5    A.          Yes.
 6    Q.          And it acknowledges the receipt of
 7    your communication to him that Barber had been
 8    terminated, led to his termination of his
 9    employment, right?
10    A.          Correct.
11    Q.          And APOST, if Barber was going to be
12    hired anywhere else in the state as a police
13    officer, he would have to first stand before the
14    APOST Commission on character review, correct?
15    A.          Correct.
16    Q.          All right.  You recommended that
17    Barber not be eligible for rehiring, correct?
18    A.          Correct.
19    Q.          Did you think that he was of the
20    character that you would want to have in a police
21    officer?
22                MR. EAST:  Object to form.
23    A.          Repeat the question.  I'm sorry.
24    Q.          Do you think that Barber had the
25    character that you want in Montgomery police
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 87

1   officers?

2   A.          Based on these violations, no.

3   Q.          Okay.  And in fact, look at the next

4   page, 1063, this page right here.

5   A.          Yes, sir.

6   Q.          And that's from you.  Are those your

7   initials up there?

8   A.          Yes.

9   Q.          This is a memo where you said,

10  "Corporal Barber would not be recommended for

11  rehire should he desire to apply for reemployment

12  with the agency," correct?

13  A.          Yes, sir.

14  Q.          All right.  The next page is 1071.

15  This is a Progressive Schedule for Disciplinary

16  Action?

17  A.          Yes, sir.

18  Q.          Was this a notice that was given to

19  Barber?

20  A.          Yes.

21  Q.          Okay.  Did he initial it there under

22  category C?

23  A.          I believe that he did.  I'm not sure.

24  Yes, he did, uh-huh.

25  Q.          And what is category C for

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 88

1  disciplinary actions?

2  A.          Termination.  And that was the

3  recommendation from Lieutenant Champlin.

4  Q.          That's the worst category of types of

5  violations, correct?

6  A.          Yes, sir.

7  Q.          And if they're found guilty of that,

8  there isn't any disciplinary action other than

9  termination, correct?

10             MR. EAST:  Object to form.

11 A.          Correct.

12 Q.          All right.  And he was found guilty of

13 that.

14 A.          Correct.

15 Q.          Mr. Finley, why didn't you fire

16 Barber?

17             MR. EAST:  Object to form.

18 A.          In what sense?  I'm sorry.  The

19 question?

20 Q.          Well, you had done everything and I

21 think had approved his termination, but you didn't

22 terminate him, did you?

23 A.          He rendered his resignation in lieu of

24 termination.

25 Q.          Was it made clear to him that if he

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 89

1  didn't render his -- or give you a resignation that

2  he would be fired, correct?

3        MR. EAST:  Object to form.

4  A.        Well, I had my hearing.  I gave my

5  recommendation.  I forwarded it up to the mayor.

6  During that time of the mayor review -- because the

7  mayor upheld the termination -- he submitted his

8  letter of resignation.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 90

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13              (Deposition was in recess)
14              MR. EAST:   I think that the Chief
15   would like to clarify one answer that he gave just
16   a moment ago about canines.
17   A.           So we recently changed the policy with
18   the canine.   Instead of apprehension, it's
19   tracking.
20   Q.           (By Mr. Nix) Oh, you did.
21   A.           Yeah.   And so that's --
22   Q.           So you don't apprehend anymore.
23   A.           We put tracking -- As far as the dog
24   being that first really responder, it would be that
25   the canine handler would be the ones who are
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 110

1   hands-on, so it's kind of modified.

2   Q.          The dog wouldn't be allowed to bite.

3   A.          Right.

4   Q.          Yeah.  Thank you for the

5   clarification.  All right.

6                (

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 111