IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WALTER PETTAWAY, as Administrator of the Estate of Joseph Lee Pettaway, deceased, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACT. NO. 2:19-cv-8-ECM ) [WO] |
| NICHOLAS D. BARBER, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Now pending before the Court is Plaintiff's motion for recusal (doc. 263) filed on March 14, 2022.

This lawsuit arises out of the death of Joseph Lee Pettaway. Plaintiff Walter Pettaway, as administrator of the estate of Joseph Lee Pettaway, brings claims against the City of Montgomery and several of its police officers pursuant to 42 U.S.C. § 1983, and an Alabama state law claim for wrongful death. The Plaintiff seeks the undersigned's recusal pursuant to 28 U.S.C. § 455(a), on the grounds that she and C. Winston Sheehan, one of the lawyers representing several Defendants in this case, previously worked together at the same law firm, Ball, Ball, Matthews & Novak.

The Plaintiff's motion is fully briefed and ripe for review. For the reasons explained below, the motion is due to be denied.

## II.  LEGAL STANDARD

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned."  This subsection "embodies an objective standard" for determining whether recusal is warranted. *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).  "The test is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Id.*  The Eleventh Circuit has observed that "[t]here are twin, and sometimes competing, policies that bear on the application of the § 455(a) standard." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (per curiam).  The court explained:

> The first [policy] is that courts must not only be, but must seem to be, free of bias or prejudice.  Thus the situation is viewed through the eyes of the objective person.  A second policy is that a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation.  If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges.

*Id.*

The Judicial Conference of the United States' Committee on Codes of Conduct "recommends that judges consider a recusal period of at least two years" in cases argued by lawyers at the judge's former law firm. Jud. Conf. Comm. on Codes of Conduct, Guide to Judiciary Policy, Vol. 2, Pt. B, Ch. 2, *Advisory Opinion No. 24*, at 25 (June 2009).

### III.  BACKGROUND

The Court summarizes the relevant procedural history of this case.  On June 21, 2021, the Court entered a Uniform Scheduling Order setting this case for trial on November 14, 2022, and setting deadlines for completing discovery, filing dispositive motions, and other matters. (Doc. 197).  The Defendants' expert witness disclosure deadline was March 10, 2022; the discovery deadline was April 25, 2022; and the dispositive motions deadline was May 25, 2022. (*Id.* at 2–3).  On September 8, 2021, the Plaintiff, with the Court's leave, filed a Third Amended Complaint adding the City of Montgomery and Ernest N. Finley as defendants.[1] (Doc. 205).

On February 22, 2022, attorneys C. Winston Sheehan and Robert "Trip" DeMoss filed notices of appearance on behalf of the following Defendants: the City, Finley, Michael Green, Bianka Ruiz, Joshua Smith, and Keiundra Watts. (Docs. 228 & 229).  Also on February 22, 2022, the City, Finley, Green, Ruiz, Smith, and Watts filed a motion for extension of certain deadlines. (Doc. 230).  They sought an additional forty-five days to submit their expert witness disclosures, to complete discovery, and to file dispositive motions. (*Id.*).  They represented that new counsel had recently been hired to represent them, that the case involved voluminous discovery, and that the Plaintiff had not provided dates for the depositions of the Plaintiff's experts.  They also noted that the Plaintiff has amended the complaint three times.  The motion indicated that Defendants' counsel had contacted Plaintiff's counsel regarding the requested extension, but Plaintiff's counsel had

---

[1] The City and Finley were named as defendants in the Plaintiff's original complaint, (doc. 1), but were not named in the Plaintiff's first amended complaint, (doc. 21), or second amended complaint, (doc. 147).

3

not responded. (*Id.* at 2, para. 8). On February 24, 2022, the Court granted the motion to the extent that it entered an Amended Scheduling Order resetting the trial to March 23, 2023 and extending all unexpired deadlines to the dates tied to that trial term, except that the Court extended the Defendants' expert witness disclosure deadline by only forty-five days. (Doc. 231). Under the Amended Scheduling Order, the discovery deadline is September 2, 2022, and the dispositive motions deadline is October 5, 2022. (*Id.* at 2).

Also on February 24, 2022, the Plaintiff filed two motions for partial summary judgment: one motion as to Defendant Nicholas D. Barber's liability, and one motion as to the City and Finley's liability. (Docs. 233 & 234). On February 26, 2022, the Plaintiff filed a motion seeking, among other things, fourteen days to file a motion seeking the undersigned's recusal. (Doc. 239). On March 9, 2022, the Plaintiff filed a motion to require Barber, the City, and Finley to respond to the Plaintiff's motions for partial summary judgment. (Doc. 247). The same day, the Court entered an order for Barber, the City, and Finley to respond to the Plaintiff's motions. (Doc. 252). On March 11, 2022, Mr. Sheehan and Mr. DeMoss filed notices of appearance on behalf of Defendants Nicholas D. Barber and Ryan Powell. (Docs. 257 & 258).

## IV. DISCUSSION

The Plaintiff moves for the undersigned's recusal, asserting that the undersigned and Mr. Sheehan had a "very close professional working relationship" while working at the same law firm such that a reasonable person might question the undersigned's impartiality in this case. (Doc. 263 at 1). Specifically, the Plaintiff claims that the undersigned and Mr. Sheehan were co-counsel in more than twenty cases over twelve

years, some of which involved their defending a city, a city police officer, or both, against a claim or claims brought pursuant to § 1983. The Plaintiff also asserts that because Mr. Sheehan is "25-plus years older" than the undersigned and was a "senior member" of the law firm, Mr. Sheehan either expressly or implicitly would have been a mentor to the undersigned as a "young lawyer." (*Id.* at 2, para. 6). Additionally, the Plaintiff identifies certain of the undersigned's actions or inactions following Mr. Sheehan's notice of appearance in this case which, according to the Plaintiff, are contrary to usual practices and favored Mr. Sheehan's clients.[2]

The Plaintiff does not assert that the undersigned should recuse because this case involves lawyers from her previous firm, only that she should recuse based on her prior working relationship with Winston Sheehan. Specifically, the Plaintiff notes that Mr. Sheehan is older than the undersigned, that over the undersigned's approximately twenty years employed at the same firm, she worked with Mr. Sheehan as co-counsel on a number of civil actions involving law enforcement officers, governmental entities, and in § 1983 actions. (See Doc. 263-1).[3] From those limited observations, the Plaintiff asserts

---

[2] By referencing actions by the Court which the Plaintiff characterizes as both unusual and beneficial to opposing counsel, the Plaintiff seems to suggest an accusation of actual bias. However, the Plaintiff specifically proceeds under § 455(a), which calls for recusal when a judge's impartiality might reasonably be questioned. The Court is tasked with managing its docket and resolving disputes brought before it. Of course, parties may be, and often are, unhappy with a particular ruling. However, a party's disagreement with a Court's decision generally gives rise to an appeal, not an accusation of actual bias. Notably, no claim of actual bias has been made, and the Court declines to construe the motion as containing one.

[3] The Plaintiff attached as an exhibit to his motion a list of twenty-one cases he purports to have discovered on the federal court's PACER system in which the undersigned served as co-counsel with Mr. Sheehan in federal district courts during the undersigned's twenty-year career as an attorney. Notably, only three of those cases were filed within the last ten years. Further, the Plaintiff fails to identify the total number of cases in this, or any, court in which the undersigned appeared as counsel in which Mr. Sheehan did not. The Court takes judicial notice that a PACER query reveals that the undersigned appeared as counsel of record in federal district courts in Alabama in 157 cases during her practice.

that Mr. Sheehan "either expressly or implicitly would have been a mentor to Your Honor, a young lawyer with whom he was repeatedly paired and worked with as co-counsel." (Doc. 263 at 2). The Plaintiff further posits that "[t]his relationship is a much closer one than that of two lawyers simply being members of the same, firm, and even closer than the relationship engendered by two members of the same firm who only occasionally served as co-counsel in many fewer civil litigation cases." (*Id.*).

The Plaintiff does not claim to have evidentiary support for his characterization of the undersigned's relationship with Mr. Sheehan as being "much closer than two lawyers simply being members of the same law firm." Instead, the Plaintiff relies on supposition, innuendo, and speculation to assert that because an older lawyer worked on cases with a younger lawyer, the relationship necessarily developed into that of a close mentor/mentee that was so significant as to necessitate recusal. Absent from the Plaintiff's motion is any mention of the interim period of time that passed between the undersigned's years as a young associate and her becoming a partner at her law firm, and thereafter ascending to the federal bench. Indeed, young lawyers age into older lawyers, benefiting along the way from the global experiences which inform their decisions and professional path. One cannot simply point to a number of cases wherein lawyers worked together professionally as co-counsel in order to characterize a particular relationship as one requiring recusal. Any young lawyer necessarily learns from others with whom she works, both within and outside her law firm. If the undersigned had to recuse from any case involving a lawyer who, over the course of her legal career, provided some form of mentorship, guidance on comporting herself professionally, or who instilled in her the importance of working hard

and being dedicated to the rule of law, she likely would be unable to function as a judicial officer. Lawyers at the same firm working on a number of cases together is the type of routine connection among members of the legal profession that falls far short of that which requires recusal under § 455(a).

The Court now turns to the alleged actions or inactions following Mr. Sheehan's notice of appearance in this case which, according to the Plaintiff, are contrary to usual practices and favored Mr. Sheehan's clients. The Plaintiff identifies three such actions or inactions: (1) the undersigned granting Mr. Sheehan's motion for extension of deadlines, (doc. 230), without first allowing the Plaintiff an opportunity to respond; (2) the undersigned granting relief over and above what was requested in the motion; and (3) the undersigned's failure to promptly enter a briefing order on the Plaintiffs' motions for partial summary judgment.

First, the Court has significant discretion in how to manage its docket, including scheduling cases and prioritizing pending motions. Indeed, it is not uncommon for the Court to grant a party's motion even if the opposing party has not weighed in. *See, e.g.*, Doc. 285 (granting the plaintiff's motion for extension of time, (doc. 284), even though the defendants' position was unknown) (April 4, 2022). Considering the representations in the motion for extension of deadlines, and the fact that the City and Finley had been added back to the case in September 2021, the undersigned found good cause to grant an extension of the expert witness disclosure, discovery, and dispositive motions deadlines. The Plaintiff is correct that the undersigned did not merely extend those three deadlines by forty-five days. Instead, the undersigned entered an Amended Scheduling Order granting

the defendants an additional forty-five days to submit their expert witness disclosures and continuing all unexpired deadlines, including the discovery deadline, dispositive motions deadline, and trial date. The trial date was continued approximately four and a half months to the next available Northern Division trial term. The unexpired deadlines, except for the Defendants' deadline to disclose expert witnesses, were continued to the dates associated with the new trial term. Thus, the parties received an additional four and a half months to complete discovery and file dispositive motions, rather than the forty-five days requested in the motion.

The Court now turns to background facts and context relevant to the decision to enter an Amended Scheduling Order. Many of the Court's scheduling order deadlines do not operate in a vacuum, such that it is not possible to extend only some deadlines but not others. From the Court's perspective, one of the most critical deadlines is the dispositive motions deadline. The Court endeavors to rule on dispositive motions before the parties' pretrial conference. While this is not necessarily the practice of every judge in the Middle District, the undersigned is not alone in this practice. The undersigned has adopted this practice because a pretrial conference is not helpful to the parties—or the Court—if some or all the claims may be dismissed at summary judgment or if summary judgment narrows the issues. Once a dispositive motion is filed, it is not fully briefed and under submission until at least one month later. Under the Court's typical scheduling order deadlines, then, the Court has approximately ninety days from when the dispositive motion is fully briefed until the pretrial conference in which to review the parties' briefs and evidence, research the law, and draft an opinion ruling on the motion. Thus, any extension of the dispositive

8

motions deadline takes time away from the Court to rule on the motion(s).  Therefore, when a party or parties move to extend the dispositive motions deadline and the Court is inclined to grant the motion, the Court almost invariably must also extend the trial date.

Moreover, even if a party, as here, requests "only" forty-five additional days to file dispositive motions, the Court cannot simply move the trial date by forty-five days.  The undersigned hears both civil and criminal cases in three divisions in the Middle District, and the undersigned has separate dedicated trial terms for jury trials for each division.  The undersigned's civil trial terms for any given division are separated, generally, by three or four months.  All of this to say that, when the Court receives a request to extend the dispositive motions deadline, even if "only" for forty-five days, the Court generally must continue the trial date to the next trial term for the division in which the case is pending.  The end result is often a three- or four-month extension of time even where the party or parties requested less.  Accordingly, it is not unusual for the Court, in cases in which a party or parties have requested an extension of only the discovery and dispositive motions deadlines, to continue the trial date to the next trial term and extend all unexpired deadlines to the deadlines tied to that trial term. *See, e.g.*, Doc. 30 in *Aburto v. Espy et al.*, 3:20-cv-12-ECM (continuing trial date and extending all unexpired deadlines approximately three and a half months even though motion for extension of time, (doc. 29), sought only a sixty-day extension of the discovery and dispositive motions deadlines) (January 3, 2022); Doc. 26 in *Black v. YS Garments, Inc.*, 1:20-cv-767-ECM (continuing trial date and extending all unexpired deadlines approximately three months even though motion for extension of

time, (doc. 25), stated that a sixty-day extension of the discovery and dispositive motions deadlines would not require the Court to extend any other deadlines) (March 6, 2022).

Next, the Court turns to the facts and context relevant to the timing of the briefing order on the Plaintiff's motions for partial for summary judgment. The Plaintiff filed these motions, which are aimed at three of the ten defendants in this case, on February 24, 2022. (Docs. 233 & 234). The undersigned generally disfavors piecemeal summary judgment practice and finds it helpful to address this matter with the parties before entering a briefing order. However, two days after filing the motions for partial summary judgment, the Plaintiff filed a motion requesting, among other things, fourteen days to file a motion seeking the undersigned's recusal. (Doc. 239). Thus, knowing that the Plaintiff intended to file a recusal motion, the undersigned felt it would be more appropriate to take up the issue regarding piecemeal summary judgment practice with the parties after ruling on the motion to recuse. On March 9, 2022, the Plaintiff filed a motion to require the Defendants to respond to the Plaintiff's motions for partial summary judgment. (Doc. 247). The Court conducted a telephone conference the same day in which the Court explained why it had not yet entered a briefing order and explained that the undersigned disfavors piecemeal summary judgment practice. The Court heard from the Plaintiff's counsel regarding whether the Plaintiff intended to file additional motions for summary judgment and whether the Court should enter the briefing order before ruling on the motion to recuse, which had not yet been filed. The Plaintiff's counsel represented that the Plaintiff did not intend to file additional motions for summary judgment and that the Plaintiff wanted the Court to enter a briefing order even though the recusal issue had not yet been resolved.

10

Immediately following the telephone conference, the Court entered an order requiring the Defendants to respond to the Plaintiff's motions. (Doc. 252).

The Plaintiff principally relies on two cases in support of its motion for recusal: *Parker* and *Clark v. Kapila*, 612 B.R. 808 (S.D. Fla. 2019).  In *Parker*, the Eleventh Circuit held that a district court judge should have recused himself in a case where his law clerk was the son of a senior partner in the law firm representing the defendants. 855 F.2d at 1525.  In an opinion granting summary judgment to the defendants, the district judge wrote that he was indebted to his law clerk in assisting with the formulation of the opinion. *Id.* at 1523.  Additionally, the law clerk "held a hearing with counsel in the absence of the district judge and later reported the results of the hearing to the judge." *Id.*  The Eleventh Circuit concluded that the "close familial relationship" between the law clerk and a senior partner in the firm representing the defendants "might lead an objective observer, especially a lay observer, to believe that [the defendants] will receive favorable treatment from the district judge," which was "compounded by the observation" that the law clerk's father had also previously been the district judge's law clerk. *Id.* at 1524 (footnote omitted).  The court also reasoned that the district judge's crediting his law clerk in a footnote—in a dispositive opinion favorable to his father's law firm's clients—might reasonably lead the public to conclude that the law clerk had decided the case. *Id.*  Finally, the court explained that the law clerk holding a hearing without the judge and then reporting the results of the hearing to the judge also "contributed to the appearance of impropriety." *Id.*

In *Clark*, the district court held that a bankruptcy judge abused his discretion in failing to recuse himself from an adversary proceeding where the law firm representing the

11

bankruptcy trustee hired the judge's fiancé during the pendency of the case. 612 B.R. at 816–17. While motions for summary judgment were pending, the law firm representing the trustee contacted, negotiated with, and hired the bankruptcy judge's fiancé, with whom the judge also lived. *Id.* The fiancé then joined a small bankruptcy practice group at the firm comprising only four attorneys; the group was led by the trustee's lead counsel. *Id.* Neither the bankruptcy judge nor the trustee disclosed the hiring; rather, the opposing party learned about it after final judgment was entered. *Id.* at 815. After the fiancé was hired, the bankruptcy judge ruled in the trustee's favor at summary judgment, entering a permanent injunction and awarding attorney's fees and costs as a sanction for violating the automatic stay. *Id.* at 817. Eight months earlier, the bankruptcy judge had dissolved a temporary restraining order based on the same conduct. *Id.* The district court held that the bankruptcy judge should have recused himself because "a reasonable observer, armed with the relevant facts of the case, would reasonably question the impartiality of [the bankruptcy judge]." *Id.* at 816. The court first cited the trustee's law firm's hiring the bankruptcy judge's fiancé while summary judgment motions were pending. The court explained that, "[c]ontrary to [the bankruptcy judge's] order [denying the motion to recuse]," it did not matter that the fiancé was not a partner or directly involved in representing the trustee. *Id.* at 817. Rather, what mattered is that the fiancé worked for the trustee's lead counsel, "a partner, who had suddenly found himself for the first time in the course of the proceedings in a prime position to affect [the bankruptcy judge's] household income by way of offering a salary and other benefits, including raises, to the judge's fiancé." *Id.* The court also cited the fact that shortly after the fiancé's hiring, the bankruptcy judge "issued a permanent

injunction and sanctions based on the same conduct for which he previously dissolved the temporary restraining order." *Id.*

Upon consideration of the prior professional relationship with Mr. Sheehan and the relevant caselaw, the undersigned concludes that a reasonable objective observer fully informed of the facts would not question the impartiality of the undersigned in this case. That Mr. Sheehan and the undersigned worked at the same law firm for twenty years and were co-counsel on over twenty cases, many of which were early in the undersigned's career, without more, is an insufficient basis for an objective observer to question the undersigned's impartiality. "Reasonable well-informed observers understand that judges were previously practicing attorneys and that they may have worked for [a] law firm[] during their career." *Liberty Mut. Ins. Co. v. Com. Concrete Sys., LLC*, 2017 WL 1234140, at *4 (N.D. Fla. Apr. 1, 2017).[4] The Judicial Conference's Committee on Codes of Conduct "*recommends* that judges *consider* a recusal period of at least two years" in cases argued by lawyers from the judge's former law firm. Jud. Conf. Comm. on Codes of Conduct, Guide to Judiciary Policy, Vol. 2, Pt. B, Ch. 2, *Advisory Opinion No. 24*, at 25 (June 2009) (emphases added). More than three and a half years have elapsed between the time the undersigned separated from her former law firm and Mr. Sheehan filed a Notice of Appearance in this case, which is beyond the recommended two-year recusal period. Further, the Plaintiff does not suggest that the undersigned and Mr. Sheehan have maintained any type of social or professional relationship that would require recusal. *Cf.*

---

[4] The Court recognizes that *Liberty Mutual* is nonbinding and that the facts are distinguishable. Nonetheless, the Court finds the observation instructive and relevant to this case.

*Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1107, 1111 (5th Cir. 1980) (concluding that district judge should have disqualified himself in case where the judge had once been a partner in a law firm with appellant's counsel, with whom the judge had an ongoing friendship as well as a past and ongoing business relationship, and where appellant's counsel represented the judge in several unrelated matters while the case was pending).[5] Moreover, the Plaintiff's contention regarding Mr. Sheehan's serving as a mentor to the undersigned as a "young lawyer" ignores the latter half of the undersigned's career at the law firm in which she was a partner and during which time she worked with Mr. Sheehan on fewer cases than when she was an associate. In making this contention, the Plaintiff thus relies upon the undersigned's status as a young associate, one that ceased to exist when the undersigned became a partner in 2005—over seventeen years ago. A fully informed, objective observer would take these facts and the passage of time into account in evaluating the undersigned's impartiality. Additionally, that Mr. Sheehan and the undersigned were co-counsel on cases involving the same or similar legal claims as this case is an insufficient basis for an objective observer to question the undersigned's impartiality. The Plaintiff cites no authority for the proposition that an objective observer would question the undersigned's impartiality on this basis. In sum, the contention that the undersigned is or might seem to be partial based on her prior working relationship with Mr. Sheehan is,

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

14

considering all the relevant facts, highly tenuous speculation and not a basis for recusal. *See Greenough*, 782 F.2d at 1558.

Neither *Parker* nor *Clark* compels a different conclusion. *Parker* involved a close familial, and thus ongoing, relationship between the judge's law clerk and one of the lawyers in a case where the law clerk at least appeared to have considerable decision-making authority in the case. *Clark*, which is nonbinding authority, involved a possible financial benefit inuring to the benefit of a judge whose fiancé was hired by the law firm representing one of the parties in a case pending before the judge. While the Plaintiff's recusal motion focuses on a relationship between one of the lawyers and the judge herself, rather than a member of the judge's staff or family, the relationship at issue here is neither familial nor ongoing. Additionally, there is no allegation that the relationship involves a possible financial benefit to the undersigned. Rather, as explained above, the relationship between Mr. Sheehan and the undersigned is a prior professional one which is routine among lawyers in the legal profession. Thus, the undersigned is not persuaded that *Clark*'s reasoning, even if persuasive, or *Parker*'s reasoning compels a different conclusion here.

Finally, an objective observer fully informed of the facts and context surrounding the undersigned's decisions after Mr. Sheehan appeared in this case would not reasonably question the undersigned's impartiality based on those decisions, either separately or together. *See Parker*, 855 F.2d at 1524. As set forth above, the undersigned has in other cases both (1) granted motions without first allowing the opposing party an opportunity to respond, including in this case; and (2) in the face of a motion for an extension of the discovery and dispositive motions deadlines, continued a case to the next available trial

15

term and adjusted the unexpired deadlines accordingly, thereby granting an extension of time over and above what the party or parties requested. Thus, the undersigned's doing so here was not contrary to usual practices or indicative of favorable treatment for Mr. Sheehan's clients.[6] Moreover, the undersigned has explained in detail why the undersigned often continues a case to the next trial term when a party or parties request an extension of only certain deadlines. Finally, the undersigned has entered a briefing order on the Plaintiff's motions for partial summary judgment and has explained the reasons for not entering the order sooner. Thus, the Court concludes that "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal [is] sought" would not entertain a "significant doubt" about the undersigned's impartiality in this case. *See id.*

The undersigned harbors no bias in favor of or against any party or lawyer in this case. A fully informed, objective observer would not believe otherwise. And the undersigned is "just as much obliged not to recuse [herself] when it isn't called for as [she] [is] obliged to do so when it is." *Liberty Mut. Ins. Co.*, 2017 WL 1234140, at *6.

### V.  CONCLUSION

For the reasons stated, the Plaintiff's motion for recusal (doc. 263) is DENIED.

Done this 11th day of April, 2022.

                                       /s/ Emily C. Marks         
                            EMILY C. MARKS
                            CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Court also notes that all parties—Mr. Sheehan's clients, the other Defendants, and the Plaintiff—received additional time to complete discovery and file dispositive motions.