1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE MIDDLE DISTRICT OF ALABAMA

3               NORTHERN DIVISION

4

5    WALTER PETTAWAY, as  )

6    Administrator of the )

7    Estate of Joseph Lee )

8    Pettaway, deceased,  )

9         Plaintiffs,    )

10                        )

11   VS.                  )CIVIL ACTION NO:

12   NICHOLAS D. BARBER   ) 2:19-CV-0008

13   and MICHAEL B. GREEN,) DEPOSITION OF:

14        Defendants.   ) JOSHUA SMITH

15

16          S T I P U L A T I O N S

17

18          IT IS STIPULATED AND AGREED, by and

19   between the parties through their respective

20   counsel, that the deposition of:

21               JOSHUA SMITH,

22   may be taken before Merit Gilley, Commissioner

23   and Notary Public, State at Large, at the

24   Montgomery City Hall, 103 N. Perry Street,

25   Montgomery, Alabama 36104, on the 6th day of

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 1

1   October, 2021, commencing at approximately

2   9:00 a.m.

3

4          IT IS FURTHER STIPULATED AND AGREED

5   that the signature to and reading of the

6   deposition by the witness is waived, the

7   deposition to have the same force and effect as

8   if full compliance had been had with all laws

9   and rules of Court relating to the taking of

10  depositions.

11

12         IT IS FURTHER STIPULATED AND AGREED

13  that it shall not be necessary for any

14  objections to be made by counsel to any

15  questions, except as to form or leading

16  questions, and that counsel for the parties may

17  make objections and assign grounds at the time

18  of the trial, or at the time said deposition is

19  offered in evidence, or prior thereto.

20                    ***

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 2

1          I, Merit Gilley, a Court Reporter of

2   Birmingham, Alabama, and a Notary Public for the

3   State of Alabama at Large, acting as

4   Commissioner, certify that on this date, as

5   provided by the Federal Rules of Civil Procedure

6   and the foregoing stipulation of counsel, there

7   came before me on the 6th day of October, 2021,

8   at the offices of Montgomery City Hall, 103 N.

9   Perry Street, Montgomery, Alabama 36104,

10  commencing at approximately 9:00 a.m., JOSHUA

11  SMITH, witness in the above cause, for oral

12  examination, whereupon the following proceedings

13  were had:

14               JOSHUA SMITH,

15  being first duly sworn, was examined and

16  testified as follows:

17               EXAMINATION

18  BY MR. SIKES:

19  Q          Would you state your name, please,

20  sir.

21  A          Joshua Taylor Smith.

22

23

24

25

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 6

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Q          All right.  And what did you do in

19    April of 2016?

20    A          I began employment with the

21    Montgomery Police Department.

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 12

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16    Q          And when were you first sworn as a
17    police officer for the city of Montgomery?
18    A          In October I believe.
19    Q          Of 2016?
20    A          In '16.  Yes, sir.
21    Q          Okay.  And how long -- you were --
22    you were a police officer then from -- from
23    October of 2016 until, I think you said, August
24    of 2018; correct?
25    A          Yes, sir.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 13

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

```
1    Q          Little over two years?

2    A          Yes, sir.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 14

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

```
 1
 2
 3
 4
 5
 6    Q          Okay.  On -- this lawsuit arises out
 7    of the death of Mr. Pettaway on the night of
 8    July -- actually, early morning of July 8, of
 9    2018.  That was about a month before you left
10    the Montgomery Police Department; correct?
11    A          Yes, sir.
12    Q          Okay.  How were you first -- did you
13    -- you went to the scene, of course, at Cresta
14    Circle where the house was where Mr. Pettaway
15    died; correct?
16    A          Yes, sir.
17    Q          Okay.  How did you get there?
18    A          I drove.
19    Q          Okay.  Did you -- you had a police
20    cruiser vehicle assigned to you?
21    A          I had one for that night.  Yes, sir.
22
23
24
25
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 15

```
 1   arrived on scene or K-9 first.  But once Barber
 2   got there, there was a stray dog -- not Barber's
 3   dog, a stray dog that I grabbed and took to the
 4   neighbor's residence and stood in their front
 5   yard while Barber went inside that -- went to
 6   the front door and waited, gave commands.  And
 7   once he entered, I'm not sure what went on then
 8   because I was outside of the residence.
 9
10
11
12
13
14
15
16   A          Sergeant Green then asked for me to
17   go in and let them know that we needed to move
18   the victim to outside so -- because of the narrow
19   hallway wouldn't allow for a stretcher to get
20   down, so it would be more beneficial to bring him
21   outside.
22   Q          Okay.
23   A          So that he would be able to have
24   immediate attention once the ambulance got there.
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 21

1

2

3

4

5

6

7

8

9

10

11

12

13   Q          Okay.  Do Montgomery Police

14   Department vehicles have loud speakers in them,

15   things to amplify your voice?

16   A          I believe they do, sir.

17   Q          Okay.  Did yours, or do you know?

18   A          I can't recall, sir.

19   Q          Whether yours did or not?

20   A          Yes, sir.

21   Q          Okay.  But that's a common feature

22   on a lot of the police vehicles; correct?

23   A          Yes, sir.

24   Q          Okay.  While you were there, at any

25   time did you hear anybody attempt to communicate

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 23

1   in any way with whoever might be inside the

2   house other than, I think you said, when Barber

3   went there he made some announcement of some

4   sort; correct?

5   A          Yes, sir.

6   Q          Anybody else at any time ever make

7   any attempt to communicate with anybody in the

8   house that you can recollect?

9   A          I -- I don't remember.

10  Q          If it occurred, you don't remember

11  it; correct?

12  A          Yes, sir.

13

14

15

16

17

18

19

20

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 24

```
 1

 2

 3

 4

 5

 6

 7

 8

 9              What I'm asking you is:  Do you know

10  why nobody else ever made any attempt to

11  communicate with anybody in the house other than,

12  you say, Barber made some -- when he went to the

13  door?

14  A           No, sir.

15  Q           Would that not be logical to you that

16  if you were concerned about if there's somebody's

17  in the house and you want them to come out that

18  you would attempt to communicate with them?

19  A           I'm not sure why they didn't, sir.

20  Q           No.  I know.  But doesn't that seem

21  reasonable that that would be a logical thing to

22  do?

23  A           Yes, sir.

24

25
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 25

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

```
1

2

3

4

5

6

7

8

9

10

11

12    Q          Okay.  Go ahead.  You were telling

13    me, I think, about what all you did and said and

14    heard and saw.

15               And I think you left off at about the

16    point where you were asked to go inside the house

17    and bring Mr. Pettaway out of the house --

18    A          Yes, sir.

19    Q          -- is that correct?

20    A          Yes, sir.

21    Q          Tell me what all you can recollect

22    about that, about going into the house, what you

23    see -- saw, heard, did, heard other officers

24    say, what you observed.

25    A          Went into the residence.  Went down
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 36

```
1    the hallway.  And I believe it was the room to
2    the left at the end of the hallway.
3    Q          Uh-huh.
4    A          Went inside, told them that Sergeant
5    Green had asked for us to move the victim
6    outside.  And I did see blood on the ground.  We
7    -- I'm not sure if it was Thrasher or Powell or
8    -- or who it was that helped me move
9    Mr. Pettaway.  But I was at one of his
10   shoulders.  There was another officer at his
11   other shoulder, and someone was down at his
12   feet.  And we removed him from that room to the
13   outside of the residence.
14   Q          Okay.  Do you remember that he --
15   there was a bloody trail left behind him as you
16   dragged him down the hallway?
17   A          There was blood on the ground in the
18   room.  I would assume from his pants being
19   bloody that there were probably a trail.  Yes,
20   sir.
21   Q          Okay.  Where did you take him?
22   A          Right outside the front door.
23   Q          All right.  And what did you do
24   after that?
25   A          We laid Mr. Pettaway on the ground.
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 37

```
 1   Not sure if it was the grass or sidewalk.  I'm

 2   not sure.

 3   Q          Okay.

 4   A          And waited for medics.

 5   Q          Okay.  Did y'all all -- the police

 6   officers that were out there all stood around

 7   him and shined flashlights down on him?

 8   A          We were outside around him.

 9   Yes,sir.

10   Q          Okay.  I'm going to show you some

11   photographs that were taken from the video cam

12   or body cam of Police Officer Watts.  They are

13   -- they are Exhibits 1, 2, 3, and 4 to Officer

14   Flournoy's deposition.

15              And I'll ask you to take a look at

16   those photographs if you would.

17              (Plaintiff's Flournoy Exhibit 1,
                Plaintiff's Flournoy Exhibit 2,
18              Plaintiff's Flournoy Exhibit 3 and
                Plaintiff's Flournoy Exhibit 4
19              were produced for reference.)

20   A          (Witness complies.)

21   Q          Do those photographs accurately

22   reflect and depict the condition Mr. Pettaway

23   was in as he lay out on the sidewalk as you

24   remember it?

25   A          Yes, sir.
```

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

1

2

3

4

5

6

7

8   Q          Okay.  Do you understand when

9   somebody -- there's uncontrolled bleeding from a

10  wound and that no attempt is made to stop or

11  retard the flow of blood that that is a

12  potentially life-threatening event or

13  circumstance?

14  A          Potentially; yes, sir.

15  Q          Okay.  And in that case that is

16  exactly what occurred; correct?

17  A          I guess so.  Yes, sir.

18  Q          Did the Montgomery Police Department

19  provide you any training in any kind of medical

20  care or first aid?

21  A          CPR.

22  Q          Well, I -- I think that that was

23  given to you by APOST in your training.

24             Is that what you were talking about?

25  A          Yes, sir.

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 40

1    Q          Before you were a sworn police

2    officer?

3    A          Yes, sir.

4    Q          Okay.  I'm not talking about what

5    APOST gave you about CPR training.

6               And CPR now, for the record, what do

7    you understand CPR to mean?

8    A          If someone has stopped breathing,

9    you then perform CPR.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 41

1

2   Q          Okay.  That's the only training that

3   you got from anybody, and it was from APOST;

4   correct?

5   A          Yes, sir.

6   Q          All right.  And this -- the

7   Montgomery Police Department provided you no

8   training with regard to first aid or medical

9   care at all; correct?

10  A          Yes, sir.

11  Q          What I said is correct?

12  A          Correct.

13  Q          Okay.  And they didn't require you

14  to be trained in any kind of medical care or

15  first aid; correct?

16  A          Correct.

17  Q          And to the best of your knowledge,

18  they didn't require any police officer to be

19  trained in medical care or first aid to your

20  knowledge; correct?

21  A          Correct.

22  Q          You don't know of any Montgomery

23  police officer who's ever received any training

24  from the Montgomery Police Department in medical

25  care or first aid; correct?

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 42

```
 1   A          Yes, sir.
 2   Q          And were you required to sign off on
 3   it in some way electronically --
 4   A          Yes, sir.
 5   Q          -- that you had confirmed that you
 6   had seen it and read it and knew it?
 7   A          Yes, sir.
 8
 9
10              Okay.  I'm going to show you what's
11   been marked -- this was Plaintiffs' Exhibit 3 to
12   Ernest Finley's deposition.
13              Ernest Finley was in the chief of
14   police in July of 2018; correct?
15   A          Yes, sir.
16          (Plaintiffs' Finley Exhibit 3
17          was marked for identification.)
18   Q          Okay.  Have you seen that document
19   before?
20   A          Yes, sir.
21   Q          Have you seen that before?
22   A          Yes, sir.
23   Q          And what is that document?
24   A          It is the use of force, rendering
25   aid policy.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 44

1   Q           Okay.  And that was in force at -- I
2   believe in July of 2018; correct?
3   A           I -- yes, sir.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19   Q           Okay.  But as far as any kind of
20   bleeding, especially a major artery being severed
21   or cut, you had received no training about that
22   at all; correct?
23   A           No, sir.
24   Q           And don't know that any other police
25   officer had ever received any training from the

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 45

1    Montgomery Police Department about that,
2    correct, to your knowledge?
3    A          That is correct, sir.
4    Q          Okay.  I'm going to show you the
5    portion of Chief Finley's deposition.  It's been
6    marked as Exhibit C to a prior deposition.
7                      (Plaintiffs' Exhibit C was
8                      marked for identification.)
9    Q          And I'll ask you to take a look at
10   that.
11
12
13
14
15
16   Q          Would you read the question and
17   answer there, please, sir, for us.
18   A          Out loud, sir?
19   Q          Yes, sir.
20   A          Okay.  Your testimony is that MPD
21   policy 3.3.5 did not require MPD policemen who
22   cause, say, a life-threatening injury such as
23   arterial bleeding, they don't have any
24   obligation to themselves provide first aid to
25   stop or reduce the flow of blood necessary to

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 46

1    avoid loss of life; correct?

2

3

4

5

6

7

8    Q          Okay.  Do you understand that the
9    testimony of -- of Chief Finley then to be that
10   there were no circumstances under which any MPD
11   officer was required to provide medical care or
12   first aid to anybody who was injured and even to
13   the extent they had a life-threatening injury;
14   correct?

15   A          Correct.

16   Q          Okay.  Do you agree with that or
17   disagree with that?

18   A          I'm not sure I understand your --

19   Q          Do you agree that that was the policy
20   or not as -- as Chief Finley testified?

21   A          That -- yes, sir; that was the
22   policy.  Yes, sir.

23   Q          Okay.  All right.  In fact, let me
24   ask you to take a look back at Plaintiffs'
25   Exhibit 3 to Mr. Finley's deposition.

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 47

```
 1              Do you see the last sentence there,
 2    paragraph C?
 3              Would you read that out loud.
 4    A         Yes, sir.  Medical aid is to be
 5    rendered by only those trained and/or certified
 6    to render such aid.
 7    Q         Okay.  So not only you were not
 8    required to.  If you weren't trained or
 9    certified in the medical care or first aid, then
10    you were prohibited from providing any first
11    aid; correct?
12    A         Yes, sir.
13    Q         Okay.  I'll show you the exhibit --
14    Plaintiffs' Exhibit B to a prior deposition.
15                        (Plaintiffs' Exhibit B was
16                        marked for identification.)
17    Q         This is the testimony of Lieutenant
18    Andre Carlisle.
19              Do you know Lieutenant Carlisle?
20    A         I believe I remember the name.
21    Q         Okay.  But not -- that's fine.
22              He was designated by the City to
23    give testimony with regard to the training of
24    Montgomery Police Department officers.  And he
25    -- I asked him there at his deposition:  From
```

```
 1   2015 until January of 2021, during that period
 2   of time; there were no circumstances under which
 3   Montgomery police officers were required to
 4   provide hands-on first aid or medical care to an
 5   injured person; correct?
 6              And then he asked me, When there's a
 7   policy in place?
 8              I said, Yes, sir.
 9              Is that what you're asking?   .
10              I said, Yes.
11              And he then said, Okay.  Under no
12   circum -- I then asked him:  Okay.  Under no
13   circumstances that you know of was that
14   required?
15              And he answered, Under no
16   circumstances that I know of.
17              Do you agree with that testimony
18   also?
19   A          Yes, sir.
20   Q          There weren't any circumstances
21   under which any Montgomery police officer was
22   required to provide medical care to someone
23   injured, even when they had a life-threatening
24   injury; correct?
25   A          Yes, sir.
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 49

Walter Pettaway vs Nicholas D. Barber, et al.

Joshua Smith
10/6/2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10              I'm asking you:  Did anyone at the
11   Montgomery Police Department ever tell, instruct,
12   direct you that where you came upon in the course
13   of arresting somebody a potentially life-
14   threatening injury that you had the obligation to
15   provide any medical care or first aid care of any
16   type to that person to prevent their death?
17   A            No, sir.
18
19
20
21
22
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 51