Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 1 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                                    Neal Flournoy
                                                                                   9/23/2021

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE MIDDLE DISTRICT OF ALABAMA
 3                       NORTHERN DIVISION
 4
 5   WALTER PETTAWAY, as
     Administrator of the
 6   Estate of Joseph Lee            CIVIL ACTION NUMBER
     Pettaway, deceased,
 7                                        2:19-CV-0008
              Plaintiff,
 8                                    DEPOSITION OF:
     VS.
 9                                     NEAL FLOURNOY
     NICHOLAS D. BARBER
10   and MICHAEL D. GREEN,
11            Defendants.
12
13              S T I P U L A T I O N S
14        IT IS STIPULATED AND AGREED, by and between
15   the parties through their respective counsel, that
16   the deposition of:
17                    NEAL FLOURNOY
18   may be taken before Nancy S. Holland, Commissioner
19   and Notary Public, State at Large, at the law
20   office of H.E. Nix, 7505 Halcyon Pointe Drive,
21   Montgomery, Alabama, on the 23rd day of September,
22   2021, commencing at approximately 9:05 a.m.
23
24
25
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 1

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 2 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                    Neal Flournoy
                                                                    9/23/2021

1      IT IS FURTHER STIPULATED AND AGREED that
2  the signature to and reading of the deposition by
3  the witness is waived, the deposition to have the
4  same force and effect as if full compliance had
5  been had with all laws and rules of Court relating
6  to the taking of depositions.
7
8      IT IS FURTHER STIPULATED AND AGREED that it
9  shall not be necessary for any objections to be
10 made by counsel to any questions, except as to form
11 or leading questions, and that counsel for the
12 parties may make objections and assign grounds at
13 the time of the trial, or at the time said
14 deposition is offered in evidence, or prior
15 thereto.
16                        ***
17
18
19
20
21
22
23
24
25

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 3 of 12

Walter Pettaway vs Nicholas D. Barber, et al.  
Neal Flournoy  
9/23/2021

```
 1              I, Nancy S. Holland, a Court Reporter
 2   and a Notary Public for the State of Alabama at
 3   Large, acting as Commissioner, certify that on this
 4   date, pursuant to the Federal Rules of Civil
 5   Procedure and the foregoing stipulation of counsel,
 6   there came before me on the 23rd day of September,
 7   2021, at the law office of H.E. Nix, 7505 Halcyon
 8   Pointe Drive, Montgomery, Alabama, commencing at
 9   approximately 9:05 a.m, NEAL FLOURNOY, witness in
10   the above cause, for oral examination, whereupon
11   the following proceedings were had:
12              THE COURT REPORTER:  Usual
13   stipulations?
14              MR. SIKES:  Yes, ma'am.
15              MR. EAST:  Yes.
16              NEAL FLOURNOY,
17   being first duly sworn, was examined and testified
18   as follows:
19              EXAMINATION
20   BY MR. SIKES:
21   Q.         Would you state your name for the
22   record, please, sir.
23   A.         Neal Carl Flournoy.
24   Q.         Mr. Flournoy, where do you live?
25   A.         Here in Montgomery.
```

11  Q.              Okay.  Were you formerly a Montgomery
12  Police Department officer?
13  A.              Yes, sir.
14  Q.              All right.  And when were you -- when
15  did you become a Montgomery Police Department
16  officer?
17  A.              2012.
18  Q.              All right.  And when did you leave the
19  Montgomery Police Department?
20  A.              It was either the end of February or
21  the beginning of March 2020.
22  Q.              Last year.
23  A.              Yes, sir.
24  Q.              All right.  We're here about of course
25  a case in which you are a defendant involving the

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 8

```
 1   A.          I got there well after everything had
 2   happened.  I got there.  I saw Sergeant Green who
 3   was one of my supervisors at the time, so I wasn't
 4   worried about being there in a supervisory capacity
 5   or anything like that because I saw him there.  I
 6   was like okay, he's got it, he's already on scene,
 7   it's his scene, it's whatever.
 8              So I got out.  If I remember
 9   correctly, initially I saw them bringing the
10   subject -- I can't think of his name.
11   Q.          Pettaway?
12   A.          Pettaway.  I'm sorry.
13   Q.          Joseph Lee Pettaway.
14   A.          I do apologize for that.  Bringing
15   Mr. Pettaway out of the house.  I saw Barber, the
16   canine officer.  I had heard them over the radio
17   saying that they had gotten a bite, so I went over
18   to Barber and started talking to him kind of
19   lightning the mood a little bit, you know.  I asked
20   him if he got a bite.  He said that he had gotten a
21   bite.  He was kind of excited about it.  I know
22   that most canine officers are kind of excited when
23   they get a bite.  It's not something that happens
24   very often.
25
```

1-888-326-0594 depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 12

```
10   Q.           All right.  Did you witness anybody
11   attempt to give any first aid?
12   A.           No, sir.
13   Q.           Okay.  You know that people die from
14   loss of blood, correct?
15   A.           Yes, sir.
16   Q.           Okay.  And if someone is bleeding
17   heavily and that is not stopped or retarded,
18   there's a very real possibility that someone can
19   die, correct?
20   A.           Yes, sir.
21   Q.           Okay.  Did anyone ever again attempt
22   to provide anything in the way of any effort to
23   retard or stop Mr. Pettaway's bleeding?
24   A.           No, sir.
25   Q.           Okay.  Are you familiar with the
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 23

```
 1   Montgomery Police Department policies and
 2   procedures?
 3   A.        Yes, sir.
 4   Q.        I'm going to show you what was marked
 5   Plaintiff's Exhibit 3 to former Police Chief
 6   Finley's deposition.
 7             Have you got a copy of that, Chris?
 8             MR. EAST:  I do.
 9   Q.        (By Mr. Sikes) Can you identify that,
10   please, sir, for us?
11   A.        This is going to be the policy on the
12   rendering of aid.
13   Q.        Okay.  Had you seen that prior to July
14   the 7th or 8th 2018?
15   A.        Yes.
```

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 24

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 8 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                     Neal Flournoy
                                                                   9/23/2021

Q.        All right.  Let me ask you about whether -- At any time while you were a Montgomery Police Department officer, were you ever instructed under any circumstances that Montgomery police officers were to render first aid or to try to provide any kind of medical assistance or care to a person that was injured by them?

A.        We were never directed to provide medical care for anybody.  We were always told to hold off and wait for medics, call medics.  The moment that you recognize that there's an injury, call medics.  And obviously, you know, if it's a paper cut, you don't call medics for a paper cut unless the person requests it.  But in situations such as this, there's obviously something wrong, call medics.

Q.        Okay.  So was the policy that you weren't required to or was the policy that you were told not to?

A.        It was -- The policy as written if I remember was you basically have to be certified and trained to perform medical things.  If you're not certified, if you're not trained, then don't do it,

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 9 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                    Neal Flournoy
                                                                  9/23/2021

1  call for medics, let them do it.  They're the
2  medical professionals, let the medical
3  professionals do medical stuff.

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 10 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                                    Neal Flournoy
                                                                                  9/23/2021

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14   Q.          (By Mr. Sikes) Let's do this.  You've
15   seen the deposition testimony of both Finley and
16   Carlisle, correct?
17   A.          Excerpts of them, yes.
18   Q.          Okay.  Is there anything in either of
19   their deposition testimonies which have been
20   introduced as Exhibits B and C, is there anything
21   in there that you disagree with?
22   A.          No.
23
24
25
```

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 11 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                    Neal Flournoy
                                                                   9/23/2021

18  Q.          Do you know or have any reason to
19  believe that any police officer attempted to
20  communicate with whoever the unknown person was in
21  the house prior to the dog being released into the
22  house?
23  A.          I have no clue on that.
24  Q.          Okay.  Well, we have the audios from
25  the other police officers including Officer

1-888-326-0594  depos@bainandassociates.com
Bain & Associates Court Reporting Services, Inc.

Page: 43

Case 2:19-cv-00008-ECM-JTA   Document 371-19   Filed 10/04/22   Page 12 of 12

Walter Pettaway vs Nicholas D. Barber, et al.                         Neal Flournoy
                                                                       9/23/2021

```
 1    Barber's audio recording, and there isn't any
 2    attempt to communicate with anybody in the house
 3    recorded on his.  And he also testified in his
 4    deposition on Page 86, 85 and 86 that he doesn't
 5    recall and didn't ever hear anybody trying to
 6    communicate with anybody in the house prior to the
 7    time that Barber went to the door and made this
 8    sort of sing-song chant before he went into the
 9    house with the dog.
10              MR. EAST:  Object to the form.
11    Q.        Do you know anything different?
12    A.        I wasn't there for it, so...
13    Q.        I know.  I'm trying to -- Have you
14    heard anything?  I know you say that you weren't
15    present, but have you ever heard anything to
16    indicate that anybody made that attempt prior to
17    Barber going into the house?
18    A.        No.  No, sir.
19
20
21
22
23
24
25
```