IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WALTER PETTAWAY, as Administrator of the Estate of Joseph Lee Pettaway, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 2:19-cv-8-ECM-JTA |
| v. | ) ) | |
| CPL. NICHOLAS D. BARBER, et al. | ) ) | (WO) |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Plaintiff's Motion to Strike the Confidentiality Designation for MPD Police Body Cam Video Recordings, Including the Barber Body Cam Video. (Doc. No. 392.) In the motion, Plaintiff seeks to remove all confidentiality designations from all police body camera videos that were produced in discovery in this case so that he may submit the videos as part of the public record in support of his summary judgment motion. Also before the Court is Plaintiff's Motion for Oral Argument of Plaintiff's Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including the Barber Body Cam Video. (Doc. No. 419.) For the reasons stated below, the Court concludes that both motions are due to be DENIED.

## I.    FACTS AND PROCEDURAL HISTORY

This dispute arises from a 42 U.S.C. § 1983 action against current and former Montgomery police officers who responded to a suspected burglary call at an unoccupied

residence in the early morning of July 8, 2018. The body camera video from Officer Nicholas Barber ("Barber") shows him arrive at the address, assess the situation through conversation with a third party, and enter the darkened house with his canine partner to search the premises. Shortly after entry, the recording depicts the canine's attack of Joseph Lee Pettaway ("Pettaway"), officers removing Pettaway to the ground outside, the officers awaiting the arrival of an ambulance, and the steps taken by medical personnel to assist Pettaway. Pettaway later died from his injuries.

Pettaway's brother, Walter Pettaway ("Plaintiff"), as administrator of Pettaway's estate, filed this action on January 4, 2019. (Doc. No. 1.) The current operative pleading is Plaintiff's Third Amended Complaint, which names as Defendants the City of Montgomery, Alabama, Montgomery Chief of Police Ernest N. Finley, Jr., and Barber.[1] (Doc. No. 205.) The Third Amended Complaint contains allegations of unlawful seizure under the Fourth Amendment of the United States Constitution, unlawful and excessive force under the Fourth and Fourteenth Amendments, deliberate indifference to an objectively serious medical need under the Fourth and Fourteenth Amendments, unlawful police department customs and practices under the Fourteenth Amendment, and wrongful death under Ala. Code § 6-5-410 (1975). (Doc. No. 205 at 10-26.)

---

[1] The Third Amended Complaint also named as Defendants Montgomery police officers Michael Green, Justin Thrasher, Ryan Powell, Joshua Smith, Keiundra Watts, Bianka Ruiz, and Neal Flournoy. (Doc. No. 205.) However, on Plaintiff's motion, all Defendants other than the City, Finley, and Barber were dismissed on December 8, 2022. (Doc. No. 425.)

Together with the Alabama Law Enforcement Agency ("ALEA"),[2] the parties filed a Joint Motion for Entry of a Protective Order. (Doc. No. 100.) The resulting Protective Order applies to "information contained in documents produced by any party to this case, including, but not limited to, ALEA and the City, whether by subpoena or in civil discovery among parties in this case pursuant to the Federal Rules of Civil Procedure." (Doc. No. 101 at ¶ 1.) In pertinent part, the Protective Order allowed parties to mark as confidential documents produced in discovery, and provided that, if the parties agreed that such materials were confidential, the materials "thereafter shall be confidential and cannot be publicly released and shall not be disclosed outside of this case absent the Court's order to the contrary." (*Id.* at ¶ 2(c).) The Protective Order also provided that, in the event of a disagreement as to the propriety of designating materials as confidential, "any party may then seek by appropriate motion to have the Court rule upon and resolve such disagreement about the specified information" and that, until resolution of that disagreement, the material in question "shall not be filed publicly with the Court but shall instead be filed under seal with a notation that the information is confidential and subject to this Order." (*Id.* at ¶ 2(f), (j).)

As discovery commenced after the entry of the Protective Order, the City produced its Confidentiality Log and responsive discovery. Included in the discovery production were several body camera recordings from Montgomery police officers at the scene of the call, including one from Defendant Barber. All of the recordings were designated in their

---

[2] Both parties subpoenaed investigative material from ALEA. That agency required a protective order be entered before it would produce the material requested by Plaintiff and Defendants.

entirety by the City as confidential. Plaintiff disputed the confidentiality designations of the recordings and filed two motions to strike the confidentiality designations. (Docs. No. 109, 132.) The motions were extensively briefed, and the parties' written submissions, court proceedings, and Orders related to them are detailed in this Court's April 14, 2021 Order. (Doc. No. 173.) Oral argument was held on the motions on October 19, 2020. (Doc. No. 22.) In the course of the proceedings on the motions to strike the confidentiality designations (Docs. No. 109, 132), the Court ordered the City to submit the entire Barber recording for its review. (Doc. No. 120.) The Court also directed the parties to meet and confer on confidentiality designations, and to file a joint status report on any agreement regarding what information and/or video images were to be deemed confidential. (*Id*.) The Joint Status Report filed by the parties designated several segments of the Barber recording which the parties agreed should be confidential but could not agree upon how confidentiality should be maintained. (Doc. No. 125 at ¶ 2A-D; G-H.) The City asserted confidentiality on two segments of the video to which Plaintiff either objected or found the audio incomprehensible. (*Id*. at ¶ 2E-F.) A final segment upon which the parties could not agree was the excerpt of sixteen minutes and 41 seconds submitted to the Court under seal in conjunction with the first motion. (*Id*. at ¶ 3; Doc. No. 109-1.)

By Order entered April 14, 2021, the Court denied Plaintiff's motions to strike the confidentiality designations, stating that it was "not persuaded by Plaintiff's assertion that an entire video or recording cannot be designated as confidential," and that the Court was unconvinced by Plaintiff's argument that the City had no standing to assert a claim of confidentiality on behalf of others in the videos and recordings. (Doc. No. 173 at 9.) The

Court noted that Plaintiff had not identified how removing the confidentiality designation would meet any need of his or benefit him in any way. (*Id.*) Instead, Plaintiff argued that the public had a right to see the videos, an argument which the Court rejected on grounds that the public does not have a protected interest in accessing discovery materials. (*Id*. at 10.) Accordingly, the Court concluded that good cause existed to maintain the confidentiality of the recordings and videos. (*Id*. at 12.)

On October 5, 2022, motions for summary judgment were filed by Defendant Ryan Powell,[3] Plaintiff, and all Defendants jointly. (Docs. No. 374, 376, 378.) All parties have also filed motions in limine. (Docs. No. 373, 384-86), and motions to strike (Docs. No. 386, 389). In conjunction with those motions, numerous and voluminous evidentiary materials were also submitted, the vast majority of which was filed publicly. Of the numerous exhibits submitted, the parties filed under seal only the images and footage from the police body cameras, MPD dispatch logs, and exhibits containing the substance of 911 calls. Those materials were filed under seal because they were subject to the July 30, 2020 Protective Order and (in the case of the police body camera recordings) the April 14, 2021 Order. (Docs. No. 101, 173.)

On October 17, 2022, Plaintiff filed a Motion to Strike the Confidentiality Designation for MPD Police Body Cam Video Recordings, Including the Barber Body Cam Video. (Doc. No. 358.) On October 26, 2022, Defendants filed a response to the motion. (Doc. No. 400.) On November 29, 2022, Plaintiff filed a Motion for Oral Argument

---

[3] On December 8, 2022, on Plaintiff's motion, Plaintiff's claims against Powell were dismissed. (Doc. No. 425.)

of Plaintiff's Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including the Barber Body Cam Video. (Doc. No. 419.)  The motions are ripe for review.

## II.  STANDARD OF REVIEW

The common-law right to access, inspect, and copy judicial records is "a right grounded in the democratic process" and "an essential component of our system of justice" that is "instrumental in securing the integrity of the [judicial] process" because '[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.'" *Chicago Trib. Co. v. Bridgestone/Firestone, Inc*., 263 F.3d 1304, 1309, 1311 (11th Cir. 2001) (quoting *Landmark Comm. v. Virginia*, 435 U.S. 829, 839 (1978)); *see also Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The right [of public access] is important if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." (citing *United States v. Criden*, 648 F.2d 814, 824 (3d Cir. 1981)); *Robinson v. City of Huntsville*, No. 5:21-CV-00704-AKK, 2021 WL 5053276, at *4 n. 11 (N.D. Ala. Nov. 1, 2021) (noting that, as the Alabama Supreme Court has stated in a different context, "'the white light of publicity safeguards the public[,] and free disclosure of truth is the best protection against tyranny.'" (quoting *Smith v. Doss*, 37 So. 2d 118, 120 (Ala. 1948)).

Because public access is so important to ensuring the transparency, integrity, and democratic legitimacy of the courts, "[t]here is . . . a 'presumption that judicial records should be available to the public.'" *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) (quoting *Perez-Guerrero v. U.S. Att'y*

*Gen.*, 717 F.3d 1224, 1236 (11th Cir. 2013)). However, the common law right of access "is not absolute." *Id.* at 1311; *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 430 (5th Cir. August 1981)[4] (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). "As with any other form of access, it may interfere with the administration of justice and hence may have to be curtailed." *Newman*, 696 F.2d at 803. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Warner Commc'ns*, 435 U.S. at 598.

When, as here, the common law right of access is invoked as to particular documents submitted in conjunction with a substantive, non-discovery motion, but which were previously maintained as confidential subject to a Rule 26 protective order, the Court must "look[] to the nature and character of the information in question," *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1169 (11th Cir. 2019), and balance the competing interests of the parties against the public's[5] right of access to determine if good cause exists for modifying the confidentiality designation. *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 66 (11th Cir. 2013); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *Chicago Tribune*, 263 F.3d at 1311-13 (explaining that the heightened

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

[5] In *Chicago Tribune*, the court considered the press's contention that it should be allowed access to evidence in service of the public's legitimate interests, including health and safety. 263 F.3d at 1311-12. The press often acts as the public's agent in accessing public records, and "the right of access enjoyed by the press is generally no greater than that of the public at large." *Belo*, 654 F.2d at 427. Therefore, cases involving motions by the press to access judicial records are pertinent to evaluating the right of public access in this case.

scrutiny of a compelling interest standard applies when the record of an entire civil case is placed under seal, while the common law right to access documents filed in conjunction with a summary judgment motion is subject to the good cause balancing test). The party seeking modification has the burden to show good cause. In this case, the Court has already entered an Order finding good cause for maintaining the confidentiality of the materials at issue. (Doc. No. 173 at 12.) Therefore, Plaintiff, as the party seeking modification of that Order, bears the burden to show good cause for removing the confidentiality designation at this time. *See Abbvie*, 713 F.3d at 66.

Several factors are relevant to the balancing test for determining good cause, including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Newman*, 696 F.2d at 803 (citing *Warner Commc'ns*, 435 U.S. at 598–603 & n. 11); *see also Belo*, 654 F.2d at 434 (noting that the Supreme Court "recogniz[es] that a number of factors may militate against public access"). Other factors may be relevant as well, and those which are pertinent will be discussed in more detail at the appropriate juncture in this Memorandum Opinion and Order. *See, e.g.*, *Romero*, 480 F.3d at 1246 (holding that, in conducting the good cause balancing test, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public

officials or public concerns, and the availability of a less onerous alternative to sealing the documents."); *Belo*, 654 F.2d 423 (affirming the trial court's denial of press access to certain evidence out of concern for a yet-to-be-tried criminal defendant's right to a fair trial and the ability to select a fair and impartial jury).

The trial court's resolution of the balancing task and the public's right of access is a matter of discretion "'to be exercised in light of the relevant facts and circumstances of the particular case.'" *Id.* at 430 (quoting *Warner Commc'ns*, 435 U.S. at 599). Given the fact- and circumstance-intensive nature of the inquiry, "'no clear rules can be articulated as to when judicial records should be closed to the public;'" thus, the decision necessarily rests within the trial court's sound discretion. *Id.* (quoting *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976), *rev'd other grounds sub nom. Warner Commc'ns*, 435 U.S. 589). Where, as here, a trial court's decision is reviewed for abuse of discretion, the "court has a range of choices available to it." *Advance*, 918 F.3d at 1165; *see Kern v. TXO Prod. Corp.*, 738 F.2d 968, 971 (8th Cir. 1984) ("The very concept of discretion presupposes a zone of choice within which the trial courts may go either way.").

### III.   DISCUSSION

### A.   The Body Cam Videos Submitted at the Summary Judgment Stage Trigger the Right of Public Access.

All police body camera videos produced in this case were originally designated as confidential pursuant to the protective order entered in this case. (Doc. No. 101). They have been maintained under seal pursuant to this Court's orders, including the April 14, 2021 Order (Doc. No. 173) denying plaintiff's motions to strike that were filed September 14,

2020 (Doc. No. 109) and November 24, 2020 (Doc. No. 132). As explained in the April 15, 2021 Order, the common law right to access court records does not attach to mere discovery material, which the videos then were. (Doc. No. 173 at 8-13.) *See Romero*, 480 F.3d at 1245 ("The right of access does not apply to discovery…."). Though the Court denied Plaintiff's request to remove confidentiality designations from body cam discovery material, the Court also stated, "Plaintiff is free to seek removal of the confidential designations at the summary judgment stage when the Court is obligated to protect the public's right to access to *judicial records*." (Doc. No. 173 at 13 (emphasis added).) Now, Plaintiff contends that, because the case has reached "the summary judgment stage," all police body camera video produced during discovery is subject to the public's common law right of access. (Doc. No. 358.) Further, according to Plaintiff, the public's common law right of access outweighs any continued need to maintain the police body cam videos as confidential or to file them under seal. (*Id.*)

As noted in the April 14, 2021 Order, the common law right of access applies to judicial records, but not to other materials. (Doc. No. 173 at 10.) *See Chicago Tribune*, 263 F.3d at 1311 ("[W]hen applying the common-law right of access federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter."). The mere fact that the case is at the summary judgment stage does not automatically convert all litigation-related material – or even all the police body

camera footage that was the subject of the April 14, 2021 Order[6] – into judicial records.
Documents become judicial records when they are incorporated or integrated into a court's
adjudicatory proceedings, such as when the documents are attached to and relied upon in
conjunction with a dispositive motion. *See Advance*, 918 F.3d at 1166 (discussing what
makes a document a judicial record); *AbbVie*, 713 F.3d at 63 (defining judicial records as
"materials that invoke 'judicial resolution of the merits'" (quoting *Chicago Trib.*, 263 F.3d
at 1312)); *Romero*, 480 F.3d at 1246 ("A motion that is 'presented to the court to invoke
its powers or affect its decisions,' whether or not characterized as dispositive, is subject to
the public right of access." (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.
1995)); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (holding that
"the mere filing of a paper or document with the court is insufficient to render that paper a
judicial document subject to the right of public access;" rather, "the item filed must be
relevant to the performance of the judicial function and useful in the judicial process").

Therefore, to determine which body cam videos constitute judicial records at the
summary judgment stage, it is necessary to determine which videos (or portions of videos)
have been submitted in conjunction with motions at this stage.[7] Plaintiff did not specifically

---

[6] *See Bryant v. Cmty. Bankshares, Inc.*, No. 2:14-CV-1074-WKW-PWG, 2016 WL 11654390, at
*1 (M.D. Ala. May 20, 2016) ("'[M]aterial filed with discovery motions is not subject to the
common-law right of access.'" (quoting *Chicago Tribune*, 263 F.3d at 1312)).

[7] Plaintiff's motion specifically invokes only "the summary judgment stage," not all phases of the
litigation to date. (Doc. No. 139.) In the absence of any specific identification by Plaintiff as to
which videos were submitted at the summary judgment stage, the court has made a good faith
effort to determine which videos are at issue at this time as a result of the filing of summary
judgment motions. The Court will not revisit previous orders or consider whether the public right
of access applies to body cam footage attached to pleadings, motions, etc., that are not part of the
parties' recent summary-judgment-related filings. Plaintiff has not specifically requested the court

identify which body camera videos (in whole or in part) were submitted "at the summary judgment stage." The Court notes that only three of the body cam videos have been filed under seal as exhibits to the parties' summary judgment motions: the entire video from the body cam of Officer Nicholas Barber, the entire video from the body cam of Officer Keiundra Watts, and the entire video from the body cam of Officer Justin Thrasher. (Docs. No. 372-22, 372-23, 379-3, 389; Doc. No. 379 at 1-2; Doc. No. 404 at 2.) In addition, on the same day he filed his summary judgment motion, Plaintiff also filed a motion in limine to exclude the testimony of a certain expert (Doc. No. 373); in conjunction with that motion in limine, Plaintiff filed under seal "videos . . . deriving from the body cameras of" Officers Ruiz, Smith, Thrasher, Watts, Fournoy, and Powell. (Doc. No. 377).

The videos listed in the previous paragraph do trigger the right of public access because they were filed in conjunction with motions invoking the Court's powers and because they are reasonably likely to affect the Court's decisions on those motions. *Romero*, 480 F.3d at 1246 (holding that the public right of access is implicated by any motion that seeks to invoke the court's powers or affect its decisions, whether or not the motion is a dispositive one). *But see id.* (noting that the right of public access is not equally compelling as to all types of motions; "'[d]ecisions less central to merits resolutions

---

do so, and the court's obligation to wisely use its judicial resources counsels against independently undertaking the significant task of combing through the extensive record to locate and identify any other body cam discovery material that may have been attached to some other motion or pleading. However, the analysis in this Order would be applicable to the other body camera footage produced in discovery, as the body cam videos cover the same event, albeit from different angles, and the Court's April 14, 2021 Order addressed the confidentiality designation of all body camera footage produced in discovery. (Doc. No. 173.)

implicate lesser right-to-access considerations'" (quoting 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2035 (2d ed.1994)).

As to all police body cam video footage other than the body cam videos submitted in conjunction with the recent summary judgment motions and the simultaneously-filed motions in limine listed above, Plaintiff's motion to remove confidentiality designations is due to be denied because Plaintiff bases his motion on the fact that the case is at "the summary judgment stage," but he has made no showing that any other footage is implicated by the filing of summary judgment motions.

## B.     The Summary Judgment Stage Body Cam Videos Contain Confidential Material

Before embarking on the good cause balancing test, it is first necessary to determine that the body cam videos in question contain confidential material. *Cf. Chicago Trib.*, 263 F.3d at 1313 (noting the necessity of first determining whether the documents at issue contain confidential trade secrets). The parties have stipulated that certain material from the body camera worn by Officer Barber, such as identifying information of third-party witnesses, certain police radio transmissions, and the substance of 911 calls, is confidential. (Doc. No. 125.) The footage from the other police body cameras depicts essentially the same events as the footage on Officer Barber's body cam, albeit from other angles. (*See* Doc. No. 136 at 4 ¶ 6.) It follows that all[8] the summary judgment stage body cam video footage contains at least some undisputedly confidential material.

_____

[8] Plaintiff does not argue that the "videos . . . deriv[ed] from the body cameras of" Officers Ruiz,

Further, in its April 14, 2021 Order, the Court stated that it was "not persuaded by Plaintiff's assertion that an entire video recording cannot be designated as confidential," and the Court found good cause to maintain the confidentiality designation as to the videos in their entirety. (Doc. No. 173 at 9.) Plaintiff, as the party moving to modify the April 14, 2021 Order, has the burden to show good cause for doing so. *Abbvie*, 713 F.3d at 66 (holding that the burden to show good cause "is on the party seeking modification"). However, Plaintiff has not raised any new arguments on the point beyond those the Court already found unpersuasive, nor has Plaintiff argued or articulated if or how the fact that the case in the summary judgment stage might require the Court to revisit that finding.

In his Motion to Strike the Confidentiality Designation for MPD Police Body Cam Video Recordings, Plaintiff asks the Court to "remove the confidentiality designation for the video recordings made by the body cameras worn by [D]efendant Nicholas Barber and by the other [City of Montgomery police officers] . . . which this Court previously . . . recognized as confidential in its April 14, 2021 Order." (Doc. No. 392 at 1.) He seeks "to file the body camera video recordings of MPD police [officers], including the video recording made by the body camera of Nicholas Barber . . . not under seal, but in open court" as a summary judgment exhibit "in the same manner and with the same right of the public to access and right to view those recordings as the public has with all other filings of exhibits to dispositive or summary judgment motions in this [C]ourt." (*Id.* at 2.) In other

---

Smith, Thrasher, Watts, Fournoy, and Powell have been redacted to remove the material that the parties have agreed shall be confidential. (Doc. No. 377). The court will not conduct an independent review of all the footage to determine if it has been so redacted.

14

words, Plaintiff does not now seek partial removal of the confidentiality designation or the right to file redacted footage;[9] he seeks to have the confidentiality designation removed entirely so that he can publicly file the police body camera videos without restriction. *See* Fed. R. Civ. P. 7(b)(1)(c) ("A request for a court order must be made by motion. The motion must . . . state the relief sought.").

Therefore, when undertaking the balancing test at the next phase of the analysis, the Court will consider whether the right of access necessitates public access to the body cam videos in their entirety, as to which the Court previously found that maintaining the confidentiality designation was proper, and which includes material that even Plaintiff has acknowledged should be maintained as confidential.

## C.      Balancing Test

"[W]here a party has sought the protection of Rule 26, the fact that sealed material is subsequently submitted in connection with a substantive motion" subject to the public's right of access "does not mean that the confidentiality imposed by Rule 26 is automatically forgone." *Chicago Trib.*, 263 F.3d at 1313. Rather, the Court must balance the competing

---

[9] Rather than set forth the legal grounds for his requested relief in his motion, Plaintiff has opted to incorporate by reference "all of the evidence, facts, case law, legal authority, and argument contained in plaintiff's motions to strike previously filed September 14, 2020 (Doc. [No.] 109) and November 24, 2020 (Doc. [No.] 132)." (*Id*. at 2.) Notably, however, he does not now specifically incorporate the relief requested in those motions, which at points includes an offer to have someone edit the videos to remove certain confidential and objectionable material. Given the express language in his current Motion to Remove Confidentiality Designation (Doc. No. 392), which requests removal of the confidentiality designation as to all videos in their entirety, it does not appear that his current motion contemplates redaction or partial removal of the confidentiality designation. (*See* Doc. No. 392 at 2 (requesting permission to file the videos "in the same manner and with the same right of the public to access and view those recordings" as would be accorded "all other" summary judgment exhibits).)

interests of the parties and the public's interest in disclosure to determine if good cause exists to remove the confidentiality designation. *Id.* at 1313-15. As noted, the Court has already found good cause for maintaining the confidentiality designation; therefore, Plaintiff, as the party seeking modification of that finding, bears the burden to show that the balance of interests now constitutes good cause for removing that designation. *Abbvie*, 713 F.3d at 66.

On the side of removing the confidentiality designation is "the presumption . . . in favor of public access to judicial records," *Warner Commc'ns*, 435 U.S. at 602, along with the important public interests that presumption serves in light of the facts and circumstances of this particular case, namely: (1) the citizens' ability to "keep a watchful eye on the workings of public agencies" and "the operation of government" (both as to the courts and as to the police department in question); (2) the public's right to understand the legal process; and (3) the public assurance of the fairness of the judicial process. *Id*. at 598, 599 (holding that "the decision as to access" is left to the trial court's discretion, which is "to be exercised in light of the relevant facts and circumstances of the particular case"). These interests would be served by allowing the public access to the body camera footage.

In *Robinson v. City of Huntsville*, United States District Judge Abdul K. Kallon succinctly discussed the importance of public access to body cam footage in a civil case alleging excessive force by police officers resulting in the death of a member of the public, "even where there is no constitutional violation:"

> Analysis of [the parties'] legal arguments would not be complete without acknowledging their broader societal context. [The decedent]'s killing, and

16

this subsequent lawsuit and request for records, comes during a time of important reckoning in our country. To state the obvious, alleged systemic issues in policing are at the forefront of the public consciousness, sparked by countless instances of excessive force by police officers in recent years. Particularly relevant to this case, African Americans and those experiencing mental health crises are victims of police violence at disproportionately high rates. Because of this violence, community members, both nationally and here in Alabama, have organized to demand transparency and accountability in how law enforcement officers police their communities. Such transparency is crucial to maintaining trust in our criminal justice system and in our democratic society as a whole, especially because police use-of-force incidents are historically underreported or miscategorized by police departments. And because of the many doctrinal barriers that plaintiffs face in pursuing judicial remedies for alleged police misconduct, public access to videos like those at issue here . . . is imperative to foster dialogue about whether structural reforms in policing are needed.

*Robinson v. City of Huntsville*, No. 5:21-CV-00704-AKK, 2021 WL 5053276, at *3 (N.D. Ala. Nov. 1, 2021) (footnotes omitted).

The Court agrees with Judge Kallon's explanation of the weighty interests served by allowing public access under the facts and circumstances of cases such as this. However, given the contrasting procedural postures of *Robinson* and this case, it must be said that the counterweight of Defendants' interests here – as well as the public's interest in being assured the case will yet be fairly tried before an impartial jury – is positioned differently than the corollary interests of the defendants and the public in *Robinson*. In *Robinson*, Judge Kallon granted the defendants' motion to file under seal body cam footage of the police shooting the decedent, which the defendants submitted in support of their motion to dismiss. However, in granting the motion to seal, Judge Kallon "promised to 'revisit the issue after ruling on the motion to dismiss.'" *Id*. at *1 (citation omitted). After dismissing the case on the defendants' motion, Judge Kallon considered and granted a media request

to unseal the footage to allow public access. At that point, with the case concluded and no possibility of trial on the horizon, release of the footage would have had no chance of interfering with the administration of justice, and Judge Kallon understandably did not consider that factor in *Robinson*. Rather, the countervailing interests against public access in *Robinson* were the privacy interests of third parties (which Judge Kallon protected by directing that the footage be "redacted . . . insofar as is necessary to remove identifying information of third-party individuals") and the alleged privacy interests of the defendants (which Judge Kallon did not find to be good cause for denying public access under the circumstances). *Id*. at \*2, \*4. In this case, however, with only a few months remaining until jury selection and trial, while recently-filed motions for summary judgment are still pending, release of the footage at the present time implicates significant considerations regarding the interests of Defendants, the public, and the Court in ensuring both the reality and the appearance of the fair and efficient administration of justice in upcoming proceedings.

Interference with the administration of justice is the overarching concern to be weighed on the side of non-access in civil cases, *Newman*, 696 F.2d at 803. Here, the ultimate consideration on Defendants' side in the balancing process is the likely impact on the administration of justice in this civil proceeding, especially the protection of potential witnesses and third parties and the Court's practical ability to meet its obligations to empanel a jury whose unbiased decision the parties and the public may be assured will be based on the evidence presented at trial. *Romero*, 480 F.3d at 1246 (noting that factors to

be considered include "whether allowing access would impair court functions or harm legitimate privacy interests, [and] the degree of and likelihood of injury if made public."); *Belo*, 654 F.2d at 431 ("It is better to err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury."). Just as the Court must consider the role of public access in maintaining the integrity of the factfinding process and assuring the public of the fairness of the judicial proceedings, *see In re Four Search Warrants*, 945 F. Supp. 1563, 1569 (N.D. Ga. 1996), so too must the Court consider the role of preserving (for now) the confidentiality of the footage in securing the parties' and the public's interest in maintaining the integrity of the administration of justice.[10] *See Newman*, 696 F.2d at 803 (holding that the right to public access "may have to be curtailed" if it "interfere[s] with the administration of justice").

Though constitutional and due process considerations regarding the right to a jury trial are different in civil cases than in criminal cases, the parties have chosen to try this case by jury. Because the jury will be the finder of fact and determine the outcome in this case, maintaining the integrity of the jury's verdict goes to the very heart of ensuring that justice be fairly administered. *See id.* (citing *Belo*, a case involving "a yet-to-be-tried [criminal] defendant's right to a fair trial," in support of the proposition that public access

---

[10] The parties do not discuss the potential for maintaining confidentiality (at this time) in protecting the *public's* interest in the fair administration of justice. However, the Court will not overlook that consideration, as "'[t]he judge is the primary representative of the public interest in the judicial process,'" particularly where, as here, no third party has come forward to challenge the protective order. *Villoch v. Ultimate Fitness Grp., LLC*, No. 815CV00587T23MAP, 2015 WL 13792349, at *1 (M.D. Fla. June 4, 2015) (quoting *Citizen First Nat'l Bank of Princeton v. Cincinnati Ins*. Co., 178 F.3d 943, 947 (7th Cir. 1999)).

may be curtailed in a *civil* case if public access will interfere with the administration of justice). *Cf. United States v. Rowe*, 906 F.2d 654, 656 (1990) (holding, in the context of a criminal case, that the "'theory' that the jury's verdict be based solely upon the evidence offered at trial 'goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury.'" (quoting *Turner v. Louisiana*, 379 U.S. 466, 472 (1965)).

As Judge Kallon noted in *Robinson*, body cam footage in cases of this kind will appropriately be the subject of intense public scrutiny, particularly at this nationwide "time of important reckoning" with allegations of police misconduct. *See Robinson*, 2021 WL 5053276, at *3. Plaintiff himself acknowledges the media's and the public's particular and heightened interest in the allegations made in this case. (*See, e.g.,* Doc. No. 109 at 7-8; Doc. No. 139 at 10-11.) In addition, the Court is not blind to the fact that, in this age of social media, videos of alleged police misconduct and violence, when released, become instantly and pervasively available to and scrutinized by the public on a nationwide scale. The Court finds that, if released, the footage will likely be viewed and scrutinized pervasively by the public.[11] The Court further finds that release and dissemination of the footage is likely to cause the public locally and nationwide to investigate the footage and

---

[11] Though the dissemination of footage will result in public discussion on sensitive issues, the Court finds it would not likely cause "scandal" that might counterweigh the right of public access. *Nixon*, 435 U.S. at 598 (holding that the potential for creating public scandal may outweigh the right of public access). "Public *discussion* is not the same as public *scandal*. The public needs to know how the State administers its laws; without such knowledge, the public cannot form an educated opinion on this very important topic." *Hamm v. Dunn*, No. 2:17-CV-02083-KOB, 2018 WL 2431340, at *9 (N.D. Ala. May 30, 2018), *aff'd sub nom. Advance*, 918 F.3d 1161 (emphasis in original); *see also Advance*, 918 F.3d at 1169 n.7 (noting examples of "scandal") in the context of public access cases).

to form strongly held opinions about the events depicted on the body cam videos and about the viability of Plaintiff's claims and Defendants' defenses. The Court also finds that the inevitable resulting public discussion will likely mean wide dissemination of arguments, legal theories, and contentions other than those that will be presented at trial. By extension and possibly even more relevant at this current juncture, the Court finds that removing the confidentiality designation at this time will irreparably affect the potential jury pool in any potential venue in this country in a manner that will be difficult, if not impossible, to remedy through voir dire and/or special instructions to the jury.

As Plaintiff himself acknowledges, the public's viewing and discussion of the footage is likely to bias a potential jury. (Doc. No. 139 at 4.) Nevertheless, Plaintiff handwaves this potential away, arguing that whatever is contained in the video is reliable and relevant, and that all probative evidence presented at trial is likely to be "prejudicial" because it will tend to cause a jury to be more likely to decide the case in favor of one party or the other. (*Id*.) Though Plaintiff clearly believes for himself that anyone likely to view the footage would side with him, prejudicing a jury pool, even with relevant and/or reliable material,[12] is not how our system of justice is designed to function. *Cf. Patterson v. Colorado*, 205 U.S. 454, 462 (1907) ("A publication likely to reach the eyes of a jury, declaring a witness in a pending cause a perjurer, would be none the less a contempt that it was true. It would tend to obstruct the administration of justice, because even a correct conclusion is not to be reached or helped in that way, if our system of trials is to be

---

[12] The Court makes no finding here as to relevance, reliability, or admissibility.

maintained.").

Moreover, the concept that relevant evidence can duly or fairly prejudice a jury is one that pertains to the admissibility of evidence at trial.[13] Juries are expected to reach their decisions based on the evidence presented to them in the courtroom, not on externally-obtained evidence (however relevant or reliable), emotion, or bias, and material that is unduly likely to guide them to a decision by any other route is unfairly prejudicial. *See United States v. Hooks*, 147 F. App'x 956, 957–58 (11th Cir. 2005) ("The words 'unfair prejudice' in Rule 403 have been defined as 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" (quoting *Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003)); *see also Patterson*, 205 U.S. at 462 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.").

Plaintiff represents that the footage shows a "vicious dog attack," after which officers place Pettaway, "bleeding profusely from a lacerated femoral artery," on a public sidewalk, where "four to six MPD policemen st[ood] over . . . Pettaway's half-naked . . .

---

[13] Notably, in the case quoted by Plaintiff in support of his argument, the Court was considering a motion in limine, which, as that court noted, "is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence," which is "typically" made when a party "'believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard.'" *Burkhart v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-10727-WGY-HTS, 2014 U.S. Dist. LEXIS 200593, at **15, 35-36 (M.D. Fla. Apr. 28, 2014) (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)). The court in *Burkhart* was not considering the likelihood that a jury would be unfairly prejudiced by exposure to material made public prior to and outside of the court proceedings, which is the Court's concern here.

body chatting in a blithely unconcerned manner and even laughing" for approximately 15 minutes "as they callously watched [him] bleed to death." (Doc. No. 109 at 2, 6.) Plaintiff characterizes the footage as portraying Montgomery police officer conduct that will be "terrifying to the citizens of Montgomery, Alabama." (Doc. No. 139 at 11.) In the event that not all of the cumulative footage from all body cameras is presented at trial,[14] but is nevertheless released beforehand at Plaintiff's insistence, it would be necessary for the jurors to set aside such unforgettable images to focus only on the evidence and legal arguments presented in the courtroom. Upon consideration of the facts, circumstances, and evidence, as well as the parties' arguments, and based on the Court's own review of the footage, the Court finds that reasonable jurors who have seen the footage or who have been exposed to substantial discussions of the footage prior to trial will be significantly hampered in their ability to set aside any preconceptions and decide the case based solely on the evidence and legal theories submitted to them in court. Due to its graphic nature and emotional impact, the footage from the police body cameras cannot be unseen, ignored, or easily set aside.

---

[14] Plaintiff is not seeking public release of only such evidence as is likely to be admitted at trial. In fact, Plaintiff himself recognizes that some portion of the material contained in the footage is confidential and shall remain so. (Doc. No. 125.) Further, because the deadline for filing motions in limine has not yet passed, the Court will not hazard to presume that the cumulative, unredacted total footage from all body cam videos in question will be publicly presented to the jury at trial. It will be for the presiding District Judge to rule on the admissibility of evidence at trial. Nevertheless, the Court can with sufficient confidence conclude at this time that it is not dealing here with the potential jury's pretrial exposure solely to evidence that it will inevitably view at trial, but with public exposure to extensive video footage from multiple body cameras all depicting the same events that, to some as-yet-unknown extent, is substantially likely *not* to be presented in its unredacted, cumulative entirety at trial.

Before deciding how best to proceed, the Court must also consider "the availability of a less onerous alternative to" maintaining the confidentiality designation. *Romero*, 480 F.3d at 1246. The timing of the release of the videos is such that, even if it could be possible for Defendants to combat the potential jury pool impact with more speech, it could not be done in the short time between now and jury selection. *See Romero*, 480 F.3d at 1246-47 (holding that, in conducting the good cause balancing test, "courts consider . . . whether there will be an opportunity to respond to the information," and whether, time permitting, more speech would suffice to remedy the dangers of prejudicing the jury pool). Further, the significant danger of prejudice to the jury pool in these circumstances cannot be sufficiently remedied by moving the trial to some other location where the footage has not been seen and scrutinized. Conventional and social media are everywhere, and the footage can reasonably be expected to appear and be publicly viewed, analyzed, and discussed extensively on a nationwide scale. The Court has also seriously considered the alternatives of limiting instructions and vigorous voir dire, but finds those options are of questionable value here when the footage can be expected to be seen and scrutinized so pervasively by ordinary citizens, and when, due to its very character, the footage cannot be readily ignored or placed out of mind by ordinary willpower.

Predicting potential difficulties in empaneling a jury, by virtue of being a prognostication, is not a matter of absolute certainty, but positive proof of the impossibility of affording the parties a fair trial is not required. *See Belo*, 654 F.2d at 431. Having seriously considered the facts and circumstances, the Court concludes that, due to the

danger of unfair prejudice,[15] allowing public access to the body cam footage at this sensitive time in the proceedings – a little over two months before the case is set to be tried – is significantly likely to inappropriately impact the ability of the Court and the parties to empanel a jury in this case. *Cf. Mohamed*, 546 F. Supp. 2d at 1302 ("The copying and broadcasting of the video at this time is particularly problematic, with the time for jury selection . . . soon approaching."). Further, upon consideration of the range of options appropriate in this situation, and all reasonable alternatives, the Court concludes that the best course is to deny Plaintiff's motion without prejudice to revisit the matter once the dangers of pretrial publicity have passed. *See Mohamed*, 546 F. Supp. 2d at 1303 ("'[T]he public's right of access to judicial material is not necessarily a right to instantaneous access; nor does the media's right to inspect such materials include a guarantee that they will be released when the effect of their dissemination would be the most sensational.'" (quoting *United States v. Eaves*, 685 F. Supp. 1243, 1245 (N.D. Ga. 1988)).

Delay will not prejudice the public's right of access. The "time of important reckoning in our country" with respect to cases involving allegations of police misconduct, *Robinson*, at *3, will not end with the conclusion of this case. Neither will the public's interest in accessing the evidence for the purpose of holding accountable both the judicial process and the conduct of public officers. *Cf. Eaves*, 685 F. Supp. at 1245 ("At least one

---

[15] The parties are advised that nothing in this Memorandum Opinion and Order is intended in any way to reflect on the *admissibility* of the evidence. The finding of undue prejudice here pertains solely to the substantial likelihood of undue prejudice to the fair administration of justice caused by the jury pool being exposed to the unredacted footage in its entirety, and to public discussion thereof, prior to jury selection and trial.

court has noted that the inherently controversial nature of . . . tapes" concerning alleged misconduct of public officials "generates public interest in viewing them even when they are not released until after conclusion of the trial."). Entry of final judgment will not deprive the Court of jurisdiction to consider a motion to remove the confidentiality designation. *Advance*, 918 F.3d at 1166 n.5. Moreover, the trial will be a public one, and the record as it currently stands contains sufficient publicly-available evidence to place the public on notice of the substance of Plaintiff's allegations, Defendants' defenses, and the case's relevance to the public's own interest in shaping public policy and holding government institutions accountable. (*See*, *e.g.*, Docs. No. 371-72, 374-76,[16] 378-83, 403-04, 410, 417-18 (summary judgment motions, briefs, and numerous summary judgment exhibits; of this, the only exhibits filed under seal are footage and images from the body cameras and documents containing the substance of 911 calls and MPD dispatch logs)).

Therefore, the Court finds that the danger of unfair prejudice to selecting an unbiased jury outweighs the public's right of access at this time and the motion is due to be denied. However, aside from the impact on the administration of jury selection, there is

---

[16] In his summary judgment motion and brief, which is not under seal, Plaintiff includes transcriptions from those portions of the body camera recordings that he contends support his motion. (*See,* e.g.*,* Doc. No. 376 at 5 n.2, 24). In addition, Plaintiff's summary judgment filings contain verbal descriptions of the events depicted in the body cam footage. (*See*, *e.g.*, Doc. No. 376 at 24-28.)  In their summary judgment filings, Defendants have had sufficient opportunity to publicly respond to the accuracy of Plaintiff's transcriptions and his description of the body camera footage. That the events on the body cam video footage are described for the public in this limited way is sufficient to notify the public about the relevant content of the footage without the risk of tainting the jury pool by exposing the public to graphic footage that may not be introduced in its entirety at trial and that contains identifying information of third parties and undisputedly confidential material.

another consideration that weighs independently against removing the confidentiality designation as Plaintiff requests. In Plaintiff's current motion, Plaintiff seeks removal of the confidentiality designation from *all* of the footage in its entirety. As Plaintiff admits, the footage includes identifying information of third parties, including potential witnesses and others, as well as 911 calls, which the parties agree shall remain confidential. Defendants have submitted uncontradicted evidence that at least one of these third parties is already reasonably in fear for his safety as a result of his connection to the case. (Doc. No. 400-1.) The reasonable safety concerns of third parties and potential witnesses will only be exacerbated by the inevitable public dissemination of the videos, and their identifying information, upon removal of the confidentiality designation. To protect third parties[17] and maintain the confidentiality of the 911 calls, the Court will not grant the motion as to all the footage in its entirety. Because the Plaintiffs seek release of the unredacted footage, and because the entirety of the footage will remain confidential for the time being to protect the administration of the judicial proceedings, it is not necessary for the Court to attempt to fashion[18] a solution involving redacted footage at this time. *See*

---

[17] The Court is not persuaded by Defendants' argument that protecting the identity of police officers involved in this case constitutes good cause to maintain the confidentiality designation. (Doc. No. 400 at 5.) Defendants have not identified any officer whose identity would be released by removing the confidentiality designation other than those already named in the publicly filed pleadings and motions. Further, the fact that Plaintiff's allegations concern actions taken in the course of those officers' duties as public officials weighs in favor of disclosure. *See Robinson*, 2021 WL 5053276, at *4 (denying officers' requests to redact their identity from footage before allowing public access because the officers were "already named in the complaint and other filings" and because their actions in performing their duties as public officials were "rightfully the subject of public scrutiny"); *see also Romero*, 480 F.3d at 1246 (holding that, in conducting the good cause balancing test, "courts consider, among other factors . . . whether the information concerns public officials or public concerns").

[18] Though the parties largely agree as to what third party and 911 call information should remain

*Luzzi v. ATP Tour, Inc.*, No. 3:09-CV-1155-J-32MCR, 2011 WL 2693542, at *3 (M.D. Fla. July 12, 2011) ("[T]he Eleventh Circuit has held that legitimate privacy interests are an important factor to be considered." (citing *Romero*, 480 F.3d at 1246)).

Accordingly, the confidentiality designation shall be maintained as to all body camera footage at issue until, upon motion, good cause is shown that removal of the confidentiality designation is both appropriate in light of all facts and circumstances and no longer poses a significant danger to the administration of justice in this case. *See Robinson*, 2021 WL 5053276 (revisiting, after the case had been dismissed, a prior ruling sealing police body cam footage filed in conjunction with a motion to dismiss a civil action involving allegations of excessive use of force); *see also Belo*, 654 F.2d 423 (affirming the trial court's denial of press access to certain evidence out of concern for a yet-to-be-tried criminal defendant's right to a fair trial and the ability to select a fair and impartial jury); *Mohamed*, 546 F. Supp. 2d at 1303 ("[T]he decision whether to allow inspection and copying of judicial records is left to a trial court's sound discretion, and I find that the copying and broadcasting of the tapes at this sensitive time in the proceedings may inappropriately impact impaneling a jury.").

### D.    Oral Argument

Also before the Court is Plaintiff's Motion for Oral Argument of Plaintiff's Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including

---

confidential, the parties have not been able (despite the Court's encouragement) to reach any consensus on how best to remove that material from the footage. (Doc. No. 125.)

the Barber Body Cam Video. (Doc. No. 419.) In support of his Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including the Barber Body Cam Video (Doc. No. 358), Plaintiff does not set forth any new arguments, but instead relies entirely on prior motions that have already been thoroughly considered and upon which oral argument was held. The parties had numerous opportunities to state their arguments and, as Plaintiff recognizes in his motion for oral argument, the issues at hand "ha[ve] been previously fully briefed." (Doc. No. 419 at 2.) Plaintiff sets forth no particular reason why oral argument would benefit the Court; in fact, Plaintiff expresses consternation that his motion to remove the confidentiality designation, which has been under submission for a little over one month, has not already been ruled upon. Oral argument would further delay that ruling for no apparent purpose.

The Court finds that oral argument is neither necessary nor an efficient use of judicial resources and that the parties' written submissions more than suffice for the purpose of ruling on Plaintiff's Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including the Barber Body Cam Video. (Doc. No. 358.). Therefore, Plaintiff's motion for oral argument (Doc. No. 419) is due to be denied.

## IV.    CONCLUSION

For the reasons stated above, and for good cause, it is ORDERED as follows:

1.    Plaintiff's Motion to Strike the Confidentiality Designation for MPD Police Body Cam Video Recordings, Including the Barber Body Cam Video (Doc. No. 358) is DENIED.

2. Plaintiff's Motion for Oral Argument of Plaintiff's Motion to Strike Confidentiality Designation for MPD Police Body Cam Recordings, Including the Barber Body Cam Video (Doc. No. 419) is DENIED.

DONE this 9th day of December, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE